## No. 2299.

## George W. Smyth *v.* C. C. Caswell.

1. PRACTICE—EXAMINATION OF WITNESS.—Questions to one introduced as an expert propounded by the adversary, and which go to his credibility, are not proper on a cross examination of the witness when being examined before the presiding judge as to his qualifications as an expert.

2. EVIDENCE.—It is not error to charge a jury on a question involving the genuineness of a signature to a note, that it may be established by a witness capable of testifying to the genuiness of the disputed signature, that the signature to the note is genuine. Such a charge can only be construed to mean that when no one saw the note signed, the signature may be established by the opinion of a witness on the question.

3. CHARGE OF COURT.—When there is an absolute absence of all direct testimony regarding a fact pertinent to the issue, and when the absence of such testimony is the predicate for the introduction of evidence of the opinion of experts as to such fact, it is not error to announce to the jury in the charge that there is no direct evidence of the fact. Such a charge is not upon the weight of evidence, but is proper when connected with a charge directing the jury's attention to the secondary evidence, which they might look to in determining the issue.

4. COMPARISON OF HAND WRITING.—A paper, not already in evidence and having no connection with the issue to be tried, can not be introduced to establish a signature in order that it may be compared with a signature the genuiness of which is controverted. To permit such a practice is to raise a collateral issue as to the genuineness of the signature itself, which is to be the basis of comparison. If, however, a paper bearing the admitted signature of the party is already in evidence, it may be made the standard of comparison, in testing the genuineness of another signature.

5. CONSTRUCTION.—The construction of the language used in a plea of *non est factum*, is for the court, and not for the jury.

6. PRACTICE—EVIDENCE.—Gulf, Colorado & Santa Fe Railway Company v. Levy, 59 Texas, 542, and Tucker v. Hamlin, 60 Texas, 171, reviewed, and the opinion given, that the practice of admitting improper evidence and then excluding it, is wrong, but whether such a practice will require a reversal, must depend on the facts of each particular case. If it occurs in a case where the judgment is rendered, on conflicting evidence, and a contrary judgment would have been sustained on appeal, and the evidence withdrawn was calculated to secure the verdict and judgment rendered, the judgment will be reversed if it shall appear to be against a slight preponderence of legal evidence, or if the damages awarded be so large as to raise a doubt of the fairness of the jury. .

7. PRACTICE—EVIDENCE.—It is the duty of counsel who believes that evidence improperly admitted and then excluded, may tend to prejudice the case of his client, to ask a specific charge, instructing the jury to disregard the

evidence thus excluded. Failing to do this, the presumption will obtain that they had no apprehension that it would affect the verdict.

8. EVIDENCE.—In an action of debt on note, it is competent for the defendant who denies the execution of the note under oath, to introduce the record of a former judgment in his favor against plaintiff, rendered in a proceeding in which the debt sued on could have been pleaded as an offset, and was not.

9. CHARGE OF COURT.—The remedy for an incomplete instruction, when there is no objection to so much as is given, is to ask a charge to cover the matter omitted; failing to ask this, there is no remedy on appeal.

10. SAME.—An erroneous charge which from its very nature, could not have operated to the prejudice of the party complaining, will not authorize a reversal of a judgment.

APPEAL from Jefferson. Tried below before the Hon. W. H. Ford.

*Tom J. Russell,* for appellant: On his proposition that a witness can not give an opinion as an expert in a cause upon trial until he has qualified himself strictly under the rules of evidence to do so; and in a cause of this kind, where a witness was called for the sole purpose of giving an opinion as to the genuineness of a signature that is disputed, there are two certain and indispensable facts that must be established before the witness can testify, namely: First, that he has seen the person whose signature is in question write his signature; and second, that he (witness) is acquainted with the handwriting of the person in question, cited Hanley v. Gandy, 28 Texas, 211; Mapes v. Leal, 27 Texas, 345; 1 Phillips's Evidence, 433, 484, 485; 2 Starkie's Evidence, 372; 6 American edition of Cowen & Hill's notes to Phillips's Evidence, note 913, page 1321; 1 Greenleaf's Evidence, sections 576, 577, 578, et seq.

That he, witness, has had written correspondence with the person whose signature is disputed—that is, with C. C. Caswell, in this case—and is thereby familiar with the handwriting of Mr. Caswell; or, that witness has had in his possession bonds, deeds, notes, letters, or other papers signed by said person—C. C. Caswell—and which papers have been acted upon as being genuine, and not called in question in the course of business, and that witness is acquainted with the handwriting of such person—Mr. Caswell—he cited Hanley v. Gandy, 28 Texas, 211; Mapes v. Leal, 27 Texas, 345; Matlock v. Glover, 63 Texas, 236; Strother v. Lucas, 6 Peters, 766; Page v. Homans, 14 Maine, 481; Mudd v. Luckamore, 31 English Common Law, 795; 1 Phillips's Evi-

dence, 486–494; Cowan & Hill's Notes, note 914, page 1324, and note 915, page 1326, and the authorities therein cited. In some of the States evidence by comparison in handwriting is allowed in criminal cases. In case of forgery the Code of Criminal Procedure of Texas, Article 754; but the Civil Code, title 38, chapter 4, makes no such provision, but leaves the common law in force.

On his proposition that the court erred in its special charge in giving the following part in these words, in the connection in which they occur, namely: "As no witness has been called by plaintiff to testify directly to the execution of this note, you will turn your attention and inquiry," etc. Because the same is a charge upon the weight of the evidence, and liable to mislead the jury, to the injury of the plaintiff, he cited Revised Statutes, article 1317; Howerton v. Holt, 23 Texas, 51; Texas & Pacific Railway Company v. Murphy, 46 Texas, 357; Kimbro v. Hamilton, 28 Texas, 560; Johnson v. Brown, 51 Texas, 65; Sparks v. Dawson, 47 Texas, 139; Houston & Texas Central Railway Company v. Hodde, 42 Texas, 467; Davis v. Kennedy, 58 Texas, 516.

On his proposition that evidence of the execution of a certain instrument in writing or the non execution thereof, is not admissible by a comparison of handwriting where the witness has never seen the person whose signature is denied write, or is not acquainted with the signature and handwriting of such person, by having had correspondence with him, or by having had in his possession notes, bonds, deeds, papers, etc., signed or purporting to have been signed by such person, and which had been acted upon as genuine in the regular course of business and paid without question, etc., he cited Hanley v. Gandy, 28 Texas, 211; Revised Statutes, article 2245; Mapes v. Leal, 27 Texas, 345; Matlock v. Glover, 63 Texas, 336; 1 Phillips's Evidence, 486; Cowen and Hill's Notes, 914 and 915.

On his proposition that it is the duty of a court, when it rules out illegal evidence which has been stated in the hearing of the jury, to so instruct the jury in the written charge that they must disregard entirely such evidence, and the verbal instruction of the court to the jury at the time is not sufficient, he cited McCauley v. Long & Co., 61 Texas, 74; Gulf, Colorado & Santa Fe Railway Company v. Levy, 59 Texas, 543; Tucker v. Hamlin, 60 Texas, 171.

*Hal. W. Greer, T. W. Ford, Douglass & Lanier* and *Cleveland & Lockhart,* for appellee: On their proposition that the court

did not err in giving defendant's special charge number one to the jury, in that the same properly instructed the jury in the rules of law as to the proof necessary to be adduced in support of an instrument attacked by a plea of *non est factum*, cited Cox v. Cock, 59 Texas, 524; Code Criminal Procedure, Article 754; Speiden v. State, 3 Texas Court of Appeals, 156; Eborn v. Zimpelman, 47 Texas, 522; 1 Greenleaf's Evidence, sections 578, 579; Texas & Pacific Railway Company v. Chapman, 57 Texas, 81; Jordan v. State, 10 Texas, 479; Johnson v. State, 27 Texas, 758.

On their proposition that the court did not err in granting the motion of appellee, asking that appellant be required to produce and file for her inspection the note in controversy, in that her defense thereto was a plea of *non est factum*, and it was necessary to her defense to see the note in question; and the court but exercised its equitable power with sound discretion, and no injury is shown to have resulted to plaintiff therefrom, they cited Mealey v. Metropolitan Life Insurance Company, American Law Register, volume 24, number 5, page 339, and authorities there cited.

Gaines, Associate Justice. Appellant brought this suit against appellee as executrix of the will of C. C. Caswell, deceased, to recover judgment upon certain notes alleged to have been made by her testator. To one of the notes (which was for four thousand dollars), the defendant interposed pleas under oath of *non est factum*, and of failure of consideration. The finding of the jury was in her favor as to this note. The points raised by appellant's brief are mainly questions of practice, and we shall dispose of them in the order in which they are there presented.

Appellant first presents his seventh assignment of error, which is as follows:

"The court erred in overruling the objection of plaintiff that the witness Whitaker, for defendant, could not testify as an expert until he had been cross examined by plaintiff as to his (witness's) competency as an expert."

The ground of the objection to the testimony of the witness is shown by the following extract from the bill of exceptions:

"Witness, in answer to questions propounded to him by defendant's counsel, answered: 'My business is that of a lawyer. I have had experience in the comparison of handwritings for more than thirty years. I have been a professional expert for

over twenty-five years. I have been called to testify and have testified from time to time in New Orleans and elsewhere for the past twenty-five years as an expert in the comparison of hand-writing and signatures.' The witness was then asked to examine papers containing signatures of C. C. Caswell, admitted to be genuine, when the plaintiff's counsel objected to the witness making any statement about the papers, or examination of them, until plaintiff had cross examined him as to his qualifications as an expert in the cause, and to know who he was, where he came from, who brought him here, and how much he was paid for coming here. The court overruled the objections of plaintiff, stating that plaintiff should have full latitude, when he got the witness on cross examination; to which ruling of the court plaintiff excepted."

The action of the court was entirely proper. The questions which appellant's counsel proposed to ask the witness went to his credibility as a witness, and not to his competency as an expert, and were properly ruled out at that stage of the examination. Upon cross examination the witness was interrogated, and answered fully as to these matters.

The question whether it was competent for the witness to testify his opinion as to the genuineness of the signature of Caswell by a comparison with signatures admitted to be genuine, which has been so elaborately discussed by counsel under this assignment, was not raised by the objection to the testimony, and will not be considered in this place.

The next assignments of error presented in appellant's brief (which are from the first to the fifth inclusive), complain of the action of the court in giving special charge number one asked by defendant. The first alleges error in the following part of such charge in reference to the manner in which Caswell's signature to the note could be proved:

"This may be done in two ways: first, by proving by some one or more who saw him sign the note, that he did sign it; or second, by proving by a witness or witnesses capable of testifying to the genuineness of C. C. Caswell's signature, that the signature to this note is genuine. And as no witness has been called by plaintiff to testify directly to the execution of the note, you will turn your attention and inquiry strictly to the evidence as to whether the signature to this note has been shown to be genuine or not."

The substance of the objections to the charge is that rule by

which a witness is to qualify himself to testify to a signature is
not given, and that it instructs the jury in effect that witnesses
who know a signature from having seen it written, etc., must
testify positively to its genuineness, and not merely to their
opinion.

Taken by itself this may be erroneous, but the very next sen-
tence instructs the jury, that "the genuineness of a signature
may be shown by the testimony of witnesses, who though they
did not see the person sign the instrument in question, may
qualify themselves to testify their opinion of its genuineness in
two ways: First, by showing that they have seen the person
sign his name before, and the witness or witnesses, are familiar
with his signature and can swear to the same as being genuine
or by experts," etc.    The rule by which a witness can qualify
himself is stated and we think the meaning of the court suf-
ficiently clear from the context, that when the court said a signa-
ture could be proved by a witness who swears to its genuineness,
it is meant, that it may be established by his testimony as to his
opinion upon the question.

The second assignment complains that so much of the extract
already quoted from the charge as tells the jury that "no wit-
ness had been called by plaintiff to testify directly to the execu-
tion of the note," is upon the weight of the evidence.    This
statement was undeniably true, as is shown by the record; and
there being no testimony of the character mentioned, it was no
error to call the attention of the jury to the fact.    It was proper
for the court to direct the jury to the very issue to be determined
and to instruct them as to what evidence they might look to in
coming to a decision upon it.

What we have already said in regard to the first assignment
of error is sufficient to dispose of the third.    The context shows
that by the clause "can swear to the same as being genuine," the
court meant that he could swear to his opinion of its genuineness.

The fourth assignment is that "the court erred in giving to the
jury, that part of said special charge No. 1, which attempts to
define the character of expert testimony, as not being correct in
point of law, as applicable to this suit and to the character of
proof that was then before the jury; as it gave undue prominence
to the witness named Whitaker for defendant, a so-called expert."
The name of the witness Whitaker nowhere appears in the
charge.    It appears from the statement of facts, that he did not
know Caswell or his handwriting, but was called as expert in

order to testify his opinion to be derived from an examination of the admitted signatures of Caswell, whether the latter signed the note in question or not.

If it was competent for defendant to offer expert testimony of an opinion of the genuineness of the handwriting, formed from a comparison of the admitted signatures, then it was proper for the court to charge the jury that they could look to this evidence in determining the issue before them. This did not give the evidence undue prominence. But here we come back to the first question discussed by counsel for appellant in his brief. Was this testimony admissible? The plaintiff had in the first instance called witness to prove that certain papers not in the case had the genuine signature of Caswell, and it would seem from the bill of exceptions that these were other signatures to papers not in the record, which were admitted to be genuine. Plaintiff interrogated witnesses as to their opinion of the genuineness of the signature, as formed from a comparison with the admitted and proved signatures to these outside documents.

None of this was objected to by defendant. The witness Whitaker testified his opinion as to whether the name to the note and that to the other instruments, so brought into the case by plaintiff, were written by the same person. It is not necessary for us to go elsewhere for authority upon the competency of this evidence. The point was before this court, in the case of Kennedy v. Upshaw, 64 Texas, 411, and it was there held that the court did not err "in permitting witnesses who qualified as experts upon examination of papers—which were properly in evidence in the case, and of papers which appellant had introduced as bearing the genuine signature of the testator, without objection, and of a paper which, on a former trial, appellant had introduced and declared to bear the genuine signature of the testator, made at the same time as the codicil—to give their opinions as to the genuineness of the signature of the testator to the codicil."

The rule laid down in the English courts, and in many of the States of this country and in our own courts, is that papers bearing the signature of a party whose handwriting is to be 'proved, if not already in the case, can not be introduced for the purpose of comparison or of laying the foundation for the testimony of experts. The grounds, however, upon which they are excluded are, first, that such a practice is calculated to raise collateral issues as to the genuineness of the signatures offered;

and, second, that it affords an opportunity to the party offering them to obtain an advantage by an unfair selection. Neither of these objections apply when the signatures have first been introduced as genuine by the opposite party. The evidence was competent, and the court did not err in charging the jury to consider it.

This disposes of the objections to the special charge number one, given at the request of appellants. These have raised the most serious questions presented in this case. There are isolated passages in that charge from which the jury might have been led to infer that a witness who knew the handwriting of Caswell from seeing him write, could not prove his signature by giving his opinion as to its genuineness. But this is corrected in another place, in which they are told that the signature may be proved by the opinion of such witnesses. The mass of the testimony on both sides of the case consisted of this character of evidence, and its competency was nowhere disputed; and it would seem, if there had been danger of the jury's having been misled by the instruction in question, counsel for appellant would have asked a charge upon the exact point, which the court would have given. Since appellant did not do this, he can not now complain. We conclude that the assignments based upon this charge are not well taken.

The court, at the request of defendant's counsel, instructed the jury in effect that the language of the plea of *non est factum* to the note in issue was for the construction of the court, and not a matter for them to consider. This is a correct proposition of law, and it is not seen how plaintiff could have been prejudiced by it, even had nothing occurred during the progress of the trial to call for such instruction. It may have been that counsel for plaintiff in argument to the jury had sought to draw inferences from the language of the plea calculated to bias them against the good faith of the defense. If so, the instruction was entirely proper. In the absence of some showing to the contrary, we must indulge every reasonable intendment in favor of the action of the court and presume that sufficient cause existed for giving the charge as requested.

The charge does not authorize the jury to consider the plea as evidence, as appellant complains in his sixth assignment, and hence did not, as alleged by appellant, make the defendant a witness in contravention of the statute. The alleged remark of the judge in the hearing of the jury, complained of in the state-

ment under the assignment last mentioned, was neither accepted to nor assigned as error, and will not be considered.

The eighth assignment is that "the court erred in sustaining the defendant's objections to the question asked the plaintiff while on the witness stand by his counsel, viz: 'State whether you know where Mr. Caswell got the money to pay for these lumber yards.'" The answer proposed to be drawn out by the question is not given in the bill of exceptions, and hence this court can not say that it was improperly excluded. The testimony sought to be elicited may have been "as to some transaction with or statement by" defendant's testator, in which case the action of the court was certainly correct. (Rev. Stat., art. 2248.)

It is also complained that "the court erred in granting the motion made in this cause by defendant, at a former day of this term of court, viz., May, 1886, requiring the plaintiff, George W. Smyth, to file in the court the note dated August 9, 1882, for the sum of four thousand dollars, for the inspection of the defendant, thereby giving the defendant an opportunity to tamper with the signature to said note, the execution of which had been denied by defendant, by a plea of *non est factum*, before the plaintiff had offered the note as evidence upon the trial of the cause."

We need not inquire into the correctness of the ruling of the court which is here called in question. It does not appear that appellant has been in any manner prejudiced by it. If the note had actually been tampered with, this fact would doubtless have been shown upon the trial, and would probably have had an effect upon the jury most unfavorable to the defendant. But no such proof was attempted. It therefore must be presumed that the note was not in fact tampered with, and we can but conclude that plaintiff was not injured by the action of the court.

The substance of the tenth assignment of error is that "the court erred in overruling the objections of plaintiff to the question asked one G. W. Kidd, witness for defendant, by defendant's counsel, if he (Kidd) had exhibited certain papers containing the signature of C. C. Caswell, and among the number the note for four thousand dollars in suit, and what the man named Whitaker said about them;" and the eleventh complains that "the court erred in not instructing the jury in the written charge that they must disregard the statements of Kidd that Whitaker picked out the note for four thousand dollars as a forgery." These will be considered together.

The bill of exceptions shows that the witness Kidd was permitted to answer, over the objections of plaintiff's counsel, but it also appears from the bill that immediately after these answers were given, "to the declarations of Kidd to Whitaker, and by Whitaker to Kidd, the counsel for plaintiff objected, and moved the court to strike the same out, which objection and motion to strike out the court sustained, and then and there stated to the jury that such statements and declarations were not evidence in the case, and that they must not receive it as such."

This makes it evident that the testimony was ruled out, except in so far as the witness stated the mere fact that he exhibited certain papers to Whitaker. The relevancy of this evidence is not apparent, unless it be for the purpose of corroborating Whitaker upon a matter about which he had been cross examined by the counsel for the plaintiff.

But whether relevant or not for this purpose, we can not see that appellant has been in any way prejudiced by the testimony, because substantially the same fact had been adduced in evidence by his own counsel in the cross examination to which we have just referred.

The question, therefore, presents itself, was the admission of the testimony as to the statements and declarations of the witness Kidd and of Whitaker such error as calls for a reversal of the judgment, although they were subsequently excluded, and the jury were told to disregard them? In the case of the Gulf, Colorado & Santa Fe Railway Company v. Levy, 59 Texas, 542, the judgment was reversed because of error of the court in admitting illegal evidence, although it was subsequently withdrawn. But the evidence was not excluded, and the jury not instructed to disregard it until the day after it was introduced, and in the opinion stress is laid upon the fact that it was the testimony of the plaintiff himself, and was calculated to arouse the sympathy of the jury.

There large damages had been awarded, although the pecuniary damages were trivial in amount. In Long & Co. v. McAuley, 61 Texas, 74, the opinion of the court shows that there was grave doubt whether evidence was ever, in fact, withdrawn from the consideration of the jury. In Tucker v. Hamlin, 60 Texas, 171, the same question is discussed, but in that case improper evidence as to damages was admitted and was not withdrawn, except inferentially by a charge which gave the jury the correct measure of damages for the injury alleged. The practice

of admitting testimony and then excluding it is reprobated by this court in the cases cited, and is not to be commended.

But whether it requires a reversal or not is a question to be determined by the facts and circumstances of each particular case.    A judgment which would otherwise be held good as being supported by verdict upon conflicting testimony, will, in such case be set aside, if it appear to the appellate court to be against a slight preponderance of evidence, or the damages awarded be so large as to raise a doubt as to the fairness of the jury.    In the case before us the testimony was excluded as soon as it was introduced, and the jury having been then expressly told to disregard it, it is not to be presumed that it made any lasting impression upon their minds.

Besides, both parties who made the statement were upon the stand, and were subjected to a rigid cross examination as to the grounds of their opinion as to the genuineness of the signature in question by the counsel for the appellant.    In addition to these considerations the evidence to sustain the verdict was sufficiently ample to remove all doubts of the jury's having been influenced by the temporary admission of the illegal testimony.    If appellant considered that a written instruction to the jury to disregard it was necessary, he should have asked such instruction, and if asked it should have been given.    That this was not done evinces to our minds that his counsel did not feel that the jury were likely to be influenced by the excluded testimony.    For the reasons stated, we think neither the tenth nor eleventh assignments of error are well taken.

The appellant, if he had an existing demand against appellee, while her suit as executrix against him to recover debts alleged to be due her testator was pending, he could have pleaded it in offset in that suit.    The fact that he did not do this is a circumstance tending to show that no such demand existed.    We therefore think that, under the peculiar facts of this case, the court did not err in admitting in evidence a judgment rendered against him in her favor, in her representative capacity, long after the note in issue was alleged to have fallen due.

It is complained, in the thirteenth assignment, that the court erred in overruling plaintiff's exceptions to the pleas of *non est factum* and failure of consideration, "as presented in plaintiff's supplemental petition in exceptions numbers one and two."    Not finding in the supplemental petition any exceptions numbered one and two, we are at a loss to know the specific grounds of

37 — TEX. APP. LXVII.

exception to the pleas relied upon in this assignment. The proposition under the assignment is that defendant, being the executrix of the alleged maker of the note, "is incompetent to testify against the plaintiff, as the other party to the execution of the note, even to the making of the affidavit of the plea of *non est factum*." This is sufficient to show that the assignment is not well taken.

The fourteenth assignment of error is to the effect that the court erred in its general charge to the jury, in not giving full and complete instructions as to the manner of proving a signature. If the instructions were incomplete, appellant's remedy was to ask special instructions. Not having done this, he can not now complain.

It is complained by the fifteenth assignment that "the court erred in its general charge in not using the same language to the jury in regard to finding for the plaintiff as for the defendant." We do not see that the jury could have been misled by difference in the phraseology, of which appellant complains. Taking all the instructions together, there is no doubt that the jury well understood it was their duty to find for the plaintiff as to the note, the execution of which was denied, in the event they believed from the evidence that defendant's testator had signed it.

In our opinion the evidence greatly preponderated in favor of defendant upon the issue presented by her plea of *non est factum*. Therefore the sixteenth assignment is not well taken.

We find no error in the judgment, and it is affirmed.

*Affirmed.*

Opinion delivered March 26, 1887.