BURRELL ENGINEERING & CONSTRUCTION CO. v. GRISIER. (No. 8405.)*

(Court of Civil Appeals of Texas. Ft. Worth. June 24, 1916. Rehearing Denied Oct. 28, 1916.)

1. DAMAGES ⊙⇒170 — ACTION FOR PERSONAL INJURY—EVIDENCE.

In a servant's action for injury, his testimony that he had a wife and two babies, was inadmissible.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 496, 497; Dec. Dig. ⊙⇒170.]

2. APPEAL AND ERROR ⊙⇒1050(2)—HARMLESS ERROR—EVIDENCE.

In a servant's action for injury, where he was asked whether he was a man of family, and answered that he had a wife and two babies, to which answer defendant's objection was sustained, and plaintiff's counsel then remarked that he thought the testimony was not prejudicial, in the absence of any request to exclude the remark or of any showing that the testimony and remarks were probably considered to the defendant's prejudice, there was no ground for reversal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4154; Dec. Dig. ⊙⇒1050(2).]

3. EVIDENCE ⊙⇒155(1) — ADMISSIBILITY — HEARSAY.

In a servant's action for injury from the fall of a hoisting elevator, alleged to have been an unsafe place for work, and to have been out of repair, where plaintiff's witness testified that before the accident he heard defendant's employé request permission of its superintendent in charge of the work to repair the engine which he said was in bad shape, and that the superintendent said they were going to use it through the job, and where no objection was urged to such reply, proof of the request was admissible to explain the reply.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 445, 446, 457, 458; Dec. Dig. ⊙⇒ 155(1).]

4. MASTER AND SERVANT ⊙⇒270(13) — EVIDENCE—NEGLIGENCE.

Where there was other evidence of defects in the engine when the request was made, the statement of the employé that the engine was in bad order, in connection with his request for permission to repair it, was admissible to show that notice of such defect was then brought to the knowledge of defendant's superintendent, in the absence of any request for an instruction limiting the effect of such testimony to the purpose for which it was alone admissible.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 923; Dec. Dig. ⊙⇒ 270(13).]

5. MASTER AND SERVANT ⊙⇒278(12) — SUFFICIENCY OF EVIDENCE—NEGLIGENCE.

In an action for injury to the foreman of a construction company from the fall of a hoisting elevator, alleging it to be an unsafe place for work, and defendant's negligence in not keeping it in a reasonably safe condition, evidence held to support a finding of the defendant's negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 965; Dec. Dig. ⊙⇒ 278(12).]

6. EVIDENCE ⊙⇒77(5) — WEIGHT AND SUFFICIENCY—FAILURE TO INTRODUCE EVIDENCE.

The defendant's failure to introduce its engineer as a witness created no presumption that his testimony on that issue, if produced, would be unfavorable to the defendant; especially where there was no showing that his testimony was available at all, or that it was available to the defendant, and not to the plaintiff.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 97; Dec. Dig. ⊙⇒77(5).]

7. DAMAGES ⊙⇒132(4)—EXCESSIVE DAMAGES—PERSONAL INJURY.

A verdict of $3,000, awarded the ground foreman of a construction company, aged 30, earning $4.40 per day, and not educated to do any kind of office work, for an injury rendering him unconscious for a day and a half, confining him to the hospital for a few days, resulting in bruises, pains in his head, and the aggravation of a hernia, from which he had previously suffered,

so that he was unable to do any heavy lifting, was not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 375; Dec. Dig. ⊚=132(4).]

Error from District Court, Wichita County; J. W. Akin, Judge.

Action by Fred Grisier against the Burrell Engineering & Construction Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Huff, Martin & Bullington, of Wichita Falls, for plaintiff in error. W. F. Weeks and Harry C. Weeks, both of Wichita Falls, for defendant in error.

DUNKLIN, J. The Burrell Engineering & Construction Company, as contractors, erected a building in the city of Wichita Falls. An elevator was constructed at the side of the building for the purpose of hoisting material used in the building. The car upon which the material was elevated worked between four posts, and was raised and lowered by means of a cable, the movement of which was controlled by an engine. The cable wound around a drum, and the engineer, by means of a lever operated by his foot, could cause the cable to wind or unwind around the drum, and thus raise or lower the elevator car or cage. Fred Grisier was employed by the company as ground foreman in charge of other employés who gathered and mixed material for making concrete used in the construction of the building. When the concrete was ready for such use, it was placed upon the elevator and hoisted to the men who were spreading it. Grisier, for some purpose incident to the duties of his employment, rode up on the elevator upon one of the trips carrying concrete, and after the concrete was unloaded he started down upon the elevator, when the same slipped and fell with him, a distance of some 30 or 40 feet, resulting in his injuries. He instituted this suit against the company for damages for such injuries, and from a judgment in his favor, for $3,000, the defendant has prosecuted this writ of error.

In answer to special issues the jury found that the defendant did not exercise ordinary care to furnish plaintiff a reasonably safe place to work and reasonably safe means to get to and from the different places where his duties called him; that defendant did not use ordinary care to keep the elevator and hoisting engine in a reasonably safe state of repair; and that defendant's negligence so found was the proximate cause of plaintiff's injuries. The jury also found that at the time of his injuries plaintiff had no actual knowledge that the hoisting engine was out of repair or the danger incident to riding thereon at the time, and that a person of ordinary prudence engaged as the plaintiff was would not have known of such dangers. The negligence of the defendant so found by the jury was alleged in plaintiff's petition as a basis for the recovery.

[1, 2] While plaintiff was on the witness stand he was asked by his counsel whether or not he was a man of family, to which he answered that he had a wife and two babies. After the question had been asked and answered, counsel for defendant objected, on the ground that it was irrelevant and immaterial. The objection was sustained by the court, after which ruling counsel for the plaintiff, in the presence of the jury, made the following remarks to the court:

"I think the jury has a right to know whether or not a man is married. It is not prejudicial—that could not injure anybody. I never heard of a case being reversed on an error like that, because a man testified that he was a married man in any kind of a lawsuit."

A bill of exception was reserved by defendant's counsel to the remarks of plaintiff's counsel, as well as to the testimony given by the plaintiff, but it does not appear that any request was made of the court to exclude the remarks. It is well settled by the authorities that such testimony in a suit of this character is inadmissible and so prejudicial in some instances as to constitute reversible error, notwithstanding its exclusion by the court. M., K. & T. Ry. Co. v. Thomas, 132 S. W. 974; M., K. & T. Ry. Co. v. Hannig, 91 Tex. 347, 43 S. W. 508. It is also well settled that not every error committed in the trial of a case will cause a reversal, and that if it reasonably appears from the record that an error probably did not operate to the prejudice of the complaining party, an assignment of error addressed thereto will be overruled. As the trial judge in the present instance instructed the jury not to consider the testimony complained of, then in the absence of some showing in the record that such testimony and remarks of counsel were probably considered to the prejudice of the defendant, it must be presumed that the instructions of the court were obeyed. Furthermore, defendant's counsel did not request the court to exclude the remarks of plaintiff's counsel, which doubtless would have been done upon request for another instruction in writing in the submission of the case to the jury not to consider such testimony and remarks. After a careful consideration of the evidence relating to defendant's alleged liability and the injuries sustained by the plaintiff, and the amount of damages allowed by the jury, we are unable to say that the evidence introduced and the remarks of counsel referred to would be a sufficient ground for reversal of the judgment, and, accordingly, the assignment of error now under discussion is overruled. Smyth v. Caswell, 67 Tex. 567, 4 S. W. 848; Wells Fargo v. Benjamin, 165 S. W. 120; Id., 179 S. W. 513.

[3, 4] W. D. Pierson, a witness for the plaintiff, testified that about a week before the accident he heard one of the employés request permission of Leo Jones, defendant's superintendent in charge of the work, to repair the engine which he told Jones at the

time was in bad shape, and to which request Jones replied:

"No, we are going to make it go until we get through this job before we do anything with it if we can."

The defendant objected to that testimony in so far as it related to the statement of the employé making the request of Jones, upon the following grounds:

"In the first place it is hearsay, in the second place it is coming from an absolutely unknown source, the witness not undertaking to tell how it was, who it was, or what the man was doing, even with any degree of certainty who made the remark, and we have no opportunity whatever of contradicting any such testimony as that, any cross-examination—the witness who made the re-mark—we are left in the dark as to who he was and whether it was true or untrue."

In the one and only proposition submitted under an assignment of error to the ruling of the court in admitting the testimony, the only ground of objection urged is that it was hearsay. The reply by Jones to the request could not be understood without proof of the request, and as no objection was urged to such reply, proof of the request was ad-missible to explain its meaning. Further-more, as there was other evidence tending to show defects in the engine at the time the request was made, the statement of the un-known employé that the engine was in bad order, made in connection with his request for permission to repair it, was admissible to show that notice of such defect was then brought to the knowledge of Jones, the super-intendent. In the absence of a request for an instruction to the jury limiting the effect of such testimony to the purpose alone for which it was admissible, appellant cannot complain that the jury may have considered it as proof that the engine was in an unsafe condition.

[5, 6] By other assignments of error it is insisted that the evidence is wholly insuffi-cient to show what caused the elevator to fall; insufficient to support a finding of negligence alleged in the petition as a basis for the recovery; that the only evidence from which such negligence could possibly be in-ferred was that it showed that the accident happened, which would be insufficient; that if any negligence was proven, there was no evidence to show any causal connection be-tween it and the accident in controversy.

J. E. Wallace testified that he was employ-ed upon the building when plaintiff was hurt; that he was not working on the night of plaintiff's injury, but went to work at 7 o'clock the following morning, at which time the blacksmith and the engineer were work-ing upon the hoisting engine, but witness did not know what kind of repairs were being done. F. A. Anderson, who had also been employed upon the building, testified:

That he quit work on Thursday or Friday be-fore plaintiff's injury on the following Monday or Tuesday. That the last time he noticed the brake which was used in operating the elevator it was badly out of repair. That "the lining of the brake is made out of oak wood in small blocks, put on a band with two rivets, and they are supposed to be countersunk so that the rivets won't work on the drum. By countersunk I mean that the head of the rivet is not to come out as far as the surface of the block; that is the way they are supposed to be. These were worn off and some, maybe all of them, I didn't look at each block; I noticed a few that they were worn so that the rivet heads were working on the drum, that would make it slip and get hot. When the drum slipped in the blocks, that would affect the stopping of the elevator; it would make the brake weaker; if the brake slipped the elevator was liable not to stop. Half of one of the blocks was gone entirely. That is all I noticed that was the matter with it. The brake band was loose; it was plenty loose."

Fred Williams, another employé, also tes-tified that on the morning following the night of the accident he, too, saw the night engineer and the blacksmith doing some re-pair work on the elevator. F. E. Seally tes-tified that on the morning following the acci-dent he assisted in doing repair work on the elevator. He further testified as follows:

"I was blacksmith helper and they called the blacksmith to work on the brake. I say the brake was out of order. I saw it. I didn't take particular notice of the brake—just what was the matter, but I knew it was out of order be-cause I carried the tools for the blacksmith to work with. There was something else about that engine except the brake. The other parts, so far as I knew, were in good order. I saw the brake when I went out there. The brake band was loose, and the blocks in there was worn until the rivets ran against the band to hold the brake, you know, and the spindle and axle, I would call it, was worn, too. It would slip; it would not hold just exactly as they wanted it to. I saw it slip once or twice. The day man, he would step on the brake to stop the elevator. A man had to put his feet on the brake to make it work at all, to stop it. You had to put your foot on the brake to stop the brake, but sometimes he would put all his weight on the brake and it would not stop. * * * A little fellow that was the foreman and the blacksmith and another fellow, a Swede, was working on it; they were working on the brake band. They were tighten-ing it up, because it was loose. I didn't notice just where it was, but I knew they were working on the brake band. I did not see what they were doing; I didn't notice particularly. I knew they were working on it, and I knew there was something the matter with it. I saw it was loose on account of the rivets coming through the block, and one of the blocks was gone."

The foregoing testimony was sufficient to make a prima facie showing that there was some defect in the brake which caused it to slip on the occasion in controversy, in the absence of any proof offered by defendant to controvert it, notwithstanding the fact that the failure of defendant to introduce the en-gineer as a witness would create no presump-tion that his testimony upon that issue, if produced, would be unfavorable to the de-fendant, especially as there was no showing that the engineer's testimony was available at all, and, if so, that it was available to the defendant, and not to the plaintiff. Reynolds v. I. & G. N. Ry., 38 Tex. Civ. App. 273, 85 S. W. 323; F. W. B. Ry. v. Jones, 106 Tex. 345, 166 S. W. 1130. The fact that

the elevator had been used continuously for some time before the accident carrying heavy loads and without slipping did not, as contended by plaintiff in error, destroy the force of the evidence recited above tending to show that the brake was defective, and that defendant, in the exercise of ordinary care, should have discovered and remedied such defects prior to the accident.

[7] Another contention is made by the plaintiff in error that the judgment is excessive. It seems that prior to the accident the plaintiff had suffered from hernia, which was aggravated by the injury. While it was shown that plaintiff was confined to the hospital only a few days, after which time he began to do light work, yet according to the testimony introduced in his behalf, he fell some 30 or 40 feet, was thereby rendered unconscious for a period of a day and a half; for one month after his injury he had suffered pains in his head; the hernia from which he had suffered before has been permanently exaggerated; the injury to his ankle is of a permanent nature; wooden slivers were pulled out of his chin and jaw; and he was otherwise bruised; and, according to his testimony, he has been unable to do heavy lifting as he could do prior to his injury. He was 30 years of age at the time he was injured, earning a salary of $4.40 per day, and was never educated to do any kind of office work. We are of the opinion that the evidence was sufficient to sustain the amount of the recovery, that the assignment now under discussion should be overruled, and the judgment affirmed.

The foregoing is filed in lieu of our former conclusions in affirming the judgment, in order to correct certain errors in those conclusions pointed out in plaintiff in error's motion for rehearing, but which errors do not require a change in the conclusion that the judgment should be affirmed. The original opinion, therefore, is withdrawn, and the motion for rehearing is overruled.