## GADBERRY v. HOME MUT. LIFE ASS'N.

### No. 12758.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 7, 1933.

Joe S. Gambill, of Denton, and W. O. Davis, of Gainesville, for appellant.

Sullivan, Speer & Minor, of Denton, for appellee.

LATTIMORE, Justice.

The appellee is a local mutual aid association such as is referred to in article 4859, Rev. Civ. Statutes. In 1924 it issued its certificate of insurance membership to Bill Gadberry; death benefits payable to Josephus S. Gadberry. This certificate was in response to an application which recited that Bill Gadberry was then in good health and had no lameness, deformity, or injury. The insured died in 1926, and to a suit on the certificate the appellee answered that the recitals above stated in the application were untrue and were material to the risk. When the application was offered in evidence, the appellant objected because neither the same, nor a copy, was attached to the policy, under the authority of article 4951, Rev. Statutes (1911). Whatever may be our views on the questions, if of first impression, is of no consequence. We regard the issue foreclosed under First Texas Prudential Ins. Co. v. Pedigo (Tex. Com. App.) 50 S.W.(2d) 1091, 1092, which stated that article 4951 (1911), now article 5049 (1925), "does not apply to life policies of insurance written after 1909." "Nothing is found in the language of these statutes to justify the conclusion that the Legislature intended to render unavailable to the insurer as a basis for defense any false representation contained in the application unless the application accompany the policy as a part of it." The opinion was approved by the Supreme Court.

It is certain that deceased suffered from a serious deformity. The application was signed "Bill Gadberry by Josephus Gadberry." It being admitted in evidence, appellant contended that he did not sign the application, and that the signature was that of the deceas-

ed insured; that the appellee saw Bill Gadberry at the time it took his application and therefore knew of his deformity, and, not having rescinded the insurance within 90 days, may not claim the defense, by virtue of article 5044. Appellee insisted it never saw Bill Gadberry, and that appellant made out and presented the application. To afford a basis for expert testimony by comparison, appellee questioned appellant if certain tax assessments shown him did not bear his signature and appellant admitted his signature on same, and they were introduced in evidence, and thereafter appellee produced experts who swore the signatures to be those of the same person, all over appellant's objection.

The question is not whether appellant can deny the signature to an application which is a part of the contract on which he declares, but rather, is a party to a suit, offering a signature the validity of which is denied, entitled to produce, for the purpose of proving that signature at issue, signed documents otherwise alien to the case, and question the party whose signature is alleged whether the signature thus presented on such alien documents is his, and, upon receiving an affirmative answer, introduce such signature in evidence for the purpose of a predicate for comparison to show validity of the signature which is at issue in the lawsuit?

In the original case, Hanley v. Gandy, 28 Tex. 211, 91 Am. Dec. 315, the authorities are reviewed at great length, and the rule is laid down, subject to certain exceptions, that a witness will not be permitted to express his conclusion as to handwriting when that conclusion is "by means of a comparison of the disputed writing with another written specimen of the same individual produced in court" by the party offering the comparison. The rule is based upon several considerations: Collateral issues which would inevitably arise to distract the attention of the jury, the thorough investigation of which would delay interminably the dispatch of the real issues of the lawsuit, the opportunity to select specimens of handwriting especially favorable to the party offering them, and the surprise thereby occasioned which would force the postponement of the trial.

The rule, however, has its exceptions: (1) There is the exception concerning ancient documents. Just as the general rule is one of necessity to keep the wheels of justice turning, equally necessary is it that, when documents so long in existence as all witnesses to their execution and acquaintance with the signature are dead, the law permits proof by expert testimony from comparison. Cook v. First Nat'l Bank (Tex. Civ. App.) 33 S. W. 998. This rule explains the correctness of Mardcs v. Meyers, 8 Tex. Civ. App. 542, 28 S. W. 693, although the opinion gives other reasoning. (2) Also those signatures which

are introduced in evidence for some other purpose by the opposing side so that the authenticity is vouched for. Smyth v. Caswell, 67 Tex. 567, 4 S. W. 848. (3) Likewise those signatures which are already a part of the record and genuine by admission or estoppel. Kennedy v. Upshaw, 64 Tex. 411.

The language, "admittedly genuine," used by our courts in regard to this last exception (quotation from Eborn v. Zimpelman, 47 Tex. 503, 518, 26 Am. Rep. 315) is the phrase which has led to a wide divergence in later decisions of the Texas courts. The appellant there contended the signature for comparison was admissible where established by the "most satisfactory proof." The court did not in that case state any approval of such proposition. However, under it some of our courts, as in Kveton v. Keding (Tex. Civ. App.) 286 S. W. 673, and Cannon v. Sweet (Tex. Civ. App.) 28 S. W. 718, have extended the rule to allow extraneous documents with signatures to be introduced for comparison on the production by the one offering same of a witness who testified he saw the person, whose signature was in question, sign the extraneous document. To allow such is to assume that the witness cannot be mistaken or untruthful, or else to permit the opposing litigant to produce evidence to show such mistake or deceit. If the former, it violates the fundamental idea of justice; and if the latter it turns the trial aside to decide collateral issues prohibited by our Supreme Court. Hanley v. Gandy; Smyth v. Caswell, supra.

Other of our courts have declined to give the exceptions any such extension. Campbell v. Campbell (Tex. Civ. App.) 215 S. W. 134; Cook v. First National Bank, supra; Texas State Bank v. Scott (Tex. Civ. App.) 225 S. D. 571; Tarwater v. Donley County State Bank, (Tex. Civ. App.) 277 S. W. 176, 177.

"Law ought to be the crystallization of the rules of reason which govern society. The rule is the shadow, the right is the substance. When the reason fails the shadow fails." The wisest mind of all ages said: "The letter killeth but the spirit maketh alive."

■ Tested by each of the reasons for the rule, this evidence was admissible. It raised no collateral issue; for if Gadberry had not admitted his signature to the tax assessment, the inquiry was at an end. It raises no confusion in the jury's mind, for the signature is admitted. No unfairness or surprise can be urged when Gadberry admits his own signature. We conclude that the tax assessment signature was admissible upon the testimony of Gadberry that same was his signature.

We have examined all assignments of error, and find no error authorizing us to reverse the cause, and same is affirmed.