## F. H. VAHLSING, Inc., v. HARTFORD FIRE INS. CO.

### No. 10109.

Court of Civil Appeals of Texas. San Antonio.

Aug. 11, 1937.

Rehearing Denied Oct. 6, 1937.

L. L. Gragg and Brown & Bader, all of Edinburg, for appellant.

King, Wood & Morrow, of Houston, Strickland, Ewers & Wilkens and R. D. Cox, Jr., all of Mission, and H. Earl Cox, of Houston, for appellee.

SLATTON, Justice.

Hartford Fire Insurance Company sued F. H. Vahlsing, Inc., in the Ninety-Second district court of Hidalgo county, seeking to recover $17,509.25, to which suit the T. & N. O. Railroad Company was made a party.

It was alleged that the insurance company insured the T. & N. O. Railroad Company against loss by fire, and that fifteen railroad cars were damaged by fire while in the possession of the railroad company on the 8th day of February, 1935. It was asserted that the entire loss amounted to $27,586.97, and under the contract of fire insurance the railroad company carried the first $10,000 of such loss. It was further alleged that the insurance company had paid the railroad company the amount sued for and received from the railroad company written articles of subrogation.

Allegations were made that F. H. Vahlsing, Inc., a New York corporation, was engaged in the business of shipping vegetables from Elsa, Tex., that it had leased sheds and buildings from the railroad company, located at Elsa, Tex., and that under the terms of the written lease contract the said F. H. Vahlsing, Inc., had agreed to be responsible for cars placed on the spur contiguous to its leased premises in the event of the damage or destruction of such cars by fire.

It was further alleged that the railroad company had refused to file suit against F. H. Vahlsing, Inc., and for such reason the railroad company was made a party defendant. Detailed allegations were made by the insurance company claiming all things necessary to have been done by the parties concerned to place legal liability upon F. H. Vahlsing, Inc., for the amount sued for.

F. H. Vahlsing, Inc., answered by general and special demurrer, general and special denial, and many allegations of negligence on the part of the railroad company, and that such negligence was the proximate cause of the fire and damage resulting therefrom.

The railroad company answered by disclaimer.

The cause was tried to a jury and in answer to special issues the trial court rendered judgment in favor of the appellee, Hartford Fire Insurance Company, and against F. H. Vahlsing, Inc., appellant, for the sum of $12,435.68.

The appellant, F. H. Vahlsing, Inc., perfected its appeal and is before this court with 183 assignments of error and 82 propositions predicated thereon, upon which it claims its right for reversal of the judgment entered by the trial court.

Appellant's first 10 propositions challenge the right of the insurance company to re-

cover against it in the absence of pleading and proof, on the part of the insurance company, that the damage by fire was occasioned by the act or negligence of appellant, through its officers, servants, and employees.

The master policy which was issued to the T. & N. O. Railroad Company by the appellee had this provision: "This Company may require from the insured an assignment of all rights of recovery against any party for loss or damage to the extent that payment therefor is made by this Company."

The subsidiary policy delivered by appellee to the railroad company provided that "this policy is subsidiary to and forms a part of, but is not additional to, the general policy." The following provision with reference to subrogation is contained in such policy: "If this company shall claim that the fire was caused by the act or neglect of any person or corporation, private or municipal, this company shall, on payment of the loss, be subrogated to the extent of such payment to all right of recovery by the insured for the loss resulting therefrom, and such right shall be assigned to this company by the insured on receiving such payment."

The lease contract entered into by and between appellant and the railroad company, in article VI, provides: "Lessee further agrees to be responsible for cars placed for the use and benefit of or upon the request of the lessee whether said cars are owned by the lessor or others and in the event of their damage or destruction by fire originating on the premises of the lessee or through the negligence of the lessee's employees, agents or officers, the lessee agrees to promptly pay the value of said cars or the amount of such damages thereto on presentation of a bill therefor, according to the established practice of railroads in settling such matters among themselves. It is understood that this paragraph shall not impose upon the lessee the burden of paying for cars which may be damaged or destroyed by fire originating from the locomotives of lessor or by fire originating from negligence of lessor's officers or employees."

Appellant makes the contention that its lease contract with the railroad company is a contract of indemnity with reference to its liability to the railroad company for damage to cars occasioned by fire, and claims that the appellee by its contract of insurance with the railroad company, being one of indemnity, would not be subrogated to the rights of the railroad company in virtue of the appellant's relation of landlord and tenant to the railroad company,

In Joyce's The Law of Insurance (2d Ed.) vol. 5, p. 5913, it is said: "Where the insured has entered into a contract with third parties, by the terms of which such third parties are liable to the insured for any loss or damage to the property insured, the insurer will, upon payment of the loss, be entitled to be subrogated to the rights of the insured under the contract."

In 26 Corpus Juris, at page 458, § 620, it is said: "The right of subrogation is not limited to cases where the liability of the third person is founded in tort; but any right of the insured to indemnity will pass to the insurer upon payment of the loss."

The lease contract between the appellant and the railroad company, and particularly article VI, above quoted, provided that appellant "agrees to be responsible for cars placed for the use and benefit of or upon the request of the lessee * * * and in the event of their damage or destruction by fire originating on the premises of the lessee * * * the lessee agrees to promptly pay the value of said cars or the amount of such damages thereto on presentation of a bill therefor. * * *"

We construe this to mean an agreement to pay. The fire insurance contract, as between the insurance company and the railroad company, provided that the railroad company might be required to assign whatever right it might have against a third party upon the payment of the loss by the insurance company. The insurance company paid the loss to the railroad company and it in turn delivered to the insurance company an assignment of whatever cause of action it had as against the appellant. It then follows that, if the railroad company would be entitled to recover for the loss as against the appellant, the insurance company in this action stands in its shoes and would also be entitled to recover. See Chicago, St. Louis & New Orleans R. R. Co. v. Pullman Southern Co., 139 U.S. 79, 11 S.Ct. 490, 35 L.Ed. 97; 5 Tex.Jur. p. 7; Cooley's Briefs on Insurance (2d Ed.) vol. 7, p. 6686; Hartford Fire Insurance Co. v. Galveston, H. & S. A. Ry. Co. (Tex. Com.App.) 239 S.W. 919.

Then, too, the railroad company under the quoted provision of the lease had a good cause of action against appellant for

the destruction by fire of the cars. It had a right to assign such cause of action. 5 Tex.Jur. p. 7.

■ It could make no difference to the rights of appellant that the consideration for the assignment was the payment by the insurance company to the railroad company of the amount for which appellee was liable under its policies of fire insurance. 5 Tex. Jur. p. 27. It is said: "An assignee of a chose in action who sues the assignor in respect thereof must show that a consideration passed. This is upon a principle well settled in the law of contracts. But if the action is against the original obligor, the assignee may recover without such a showing, consideration for the transfer being no affair of the obligor, for it can make no difference to him whether recovery is by the assignor or by the assignee." See Iowa State Insurance Co. v. Missouri Southern Ry. Co., 223 Mo.App. 148, 9 S.W.(2d) 255.

Appellant also contends that in any event the appellee would only be entitled to recover of it such portion of the amount found by the jury as being the damages suffered by the railroad company that was in excess of the railroad company's retention of the first $10,000 of any loss. The contract of insurance between the railroad company and the appellee provided that the railroad company retained the first $10,000 of the loss of any one fire, and the record shows that the loss here was more than $27,000, and that the insurance company paid the railroad company such amount less the $10,000.

In 6 Blashfield's Cyclopedia of Automobile Law and Practice (Permanent Edition), page 508, it is said: "If the amount of damages set by the jury is less than or equal to the insurance paid, the insurer is the sole owner; if the amount is greater, the insurer is only a partial owner."

■ The amount fixed by the jury in the case before us was less than the amount paid by the insurance company. We think, from the authorities, that the appellee is the sole owner thereof. Patitucci v. Gerhardt, 206 Wis. 358, 240 N.W. 385; Terry v. Reciprocal Exchange (Mo.App.) 268 S. W. 421; Liverpool & Great Western Steam Co. v. Phenix Insurance Co., 129 U.S. 397, 9 S.Ct. 469, 32 L.Ed. 788, at page 799; Costello v. New York Central & H. R. R. Co., 238 N.Y. 240, 144 N.E. 514, 515; Texarkana & Ft. S. Ry. Co. v. Hartford Fire Insurance Co., 17 Tex.Civ.App. 498, 44 S. W. 533.

By subsequent propositions the appellant assigns error to the action of the trial court in overruling its demurrers to the pleadings of the appellee, and the trial court's refusal to submit a number of special issues to the jury, and the trial court's failure to grant its motion for an instructed verdict and to render a judgment upon the verdict of the jury in its favor, as well as to grant its motion for new trial. All are predicated upon the theory that, while there was no express covenant in the contract between it and the railroad company to make repairs, the railroad company voluntarily made repairs upon the building leased to it by the railroad company, and in so doing was guilty of negligence; that such negligence was the proximate cause of the fire and the resulting damage.

■ It is well settled in this state that in the absence of an express covenant in the lease contract a landlord is not required to keep leased premises in repair and cannot be held liable for the failure to do so. 25 Tex.Jur. 250; Churchwell et ux. v. Pure Oil Pipe Line Co. (Tex.Civ.App.) 289 S.W. 196.

■ It has also been held in this state that if after the execution of the original lease contract a landlord promises to repair the leased premises, his failure so to do creates no liability on his part. Perez v. Rabaud, 76 Tex. 191, 13 S.W. 177, 7 L. R.A. 620.

■ It also seems to be settled that a landlord can be held liable for failure to disclose a dangerous or defective condition in the leased premises, which is known to him but unknown to the tenant at the time of the letting; this rule, however, has no application where knowledge of the defect is not acquired by the landlord until after the letting, and in such event he is under no obligation to disclose to the tenant such defect. Holzhauer v. Sheeny, 127 Ky. 28, 104 S.W. 1034.

In the lease contract before us there is no provision of any nature which required the lessor railroad company to keep the leased premises in repair. It is in evidence that the west end of the building, wherein the fire which destroyed the cars was first noticed, was constructed in the year 1927 or 1928 by the appellant and used by it in its business until the year 1931, when it sold such building to the railroad company and the railroad company made additions thereto and at the same time leased all of

the building to the appellant, which contract was in writing and is in evidence in this cause. Under one of the provisions of the lease contract it was provided that in the event the building became untenantable that the railroad company would have its option to declare the lease contract at an end or to rebuild such building in the same condition as it was before the happening of the event. It is in evidence that a hurricane occurred during the term of the lease, in September, 1933, at which time a portion of the building was blown off its block and other portions of the building were almost demolished. It appears at that time the appellant and the railroad company entered into a supplemental lease contract under which the railroad company rebuilt a part of the building and patched up the other portions thereof. The evidence before us does not show that the electric wiring in any part of the building was damaged by the hurricane. The evidence does show without dispute that the railroad company did not rewire the west end of what is known in this record as the west end of the old building. In December, 1933, it is in proof, that the lights in the west end of the old building would not burn, that the officers of the appellant made this fact known to the agent of the railroad company, and at that time he procured the services of an independent contractor who made the lights burn and, according to the evidence, made the wiring safe. It is true, at that time, the independent contractor advised the railroad company that it should be rewired. The evidence tends to show that two or three times after December, 1933, and no closer than one year before the fire occurred, on February 8, 1935, that the lights in the west end of the old building would not burn, and that the railroad company employed someone to make them burn.

In 36 C.J. at page 232, it is said: "Where repairs are gratuitously made by the landlord, such fact is not an admission of liability on the part of the landlord to make repairs generally and to keep the premises in repair."

We are of opinion that the appellant cannot predicate any liability as against the railroad company because of its having gratuitously and voluntarily made the lights burn in the building, there being no covenant to do so in the lease contract, in the absence of a showing of a negligent performance.

The appellant makes the further contention that, under the supplemental lease contract, wherein the railroad company undertook to repair the building and place it in the same condition as it was before the hurricane, and its negligent failure to do so, would preclude a recovery for the loss, occasioned by fire, to the railroad company's cars. It is a sufficient answer to this contention to say that there is no evidence in this record that the railroad company knew of any dangerous or defective condition existing in the wiring system in the west end of the old building at the time the supplemental lease contract was made. There is no evidence in the record that would tend to show that the railroad company, under the supplemental lease, did not deliver back to the appellant the building in as good condition as it was before the hurricane, unless the fact as shown by the evidence of a defective wiring on December 12, 1933, several days after the building had been turned back under the supplemental lease to the appellant, would be so construed. That condition was known to the servants, agents, and employees of appellant and such information was conveyed to the railroad agent at Elsa, after which the railroad company gratuitously made the condition safe.

The trial court submitted to the jury a special issue which sought a finding as to whether or not at the time of the fire in question and for some time prior thereto the electric wiring in the old part of the building was defective, to which the jury answered "No." This finding on the part of the jury was not attacked by the appellant in the trial court, and no attack thereon is made here. As this finding seems to be the ultimate issue on the question of the claimed negligence of the railroad company, all the contentions made by the appellant as to the refusal of its requested special issues by the trial court become immaterial. Houston Compress Co. v. Houston Steel & Foundry Co. (Tex.Civ. App.) 22 S.W.(2d) 737. The appellant also makes the contention that the agents, servants, and employees of the railroad company having ascertained that the west end of the old building was in need of rewiring, and having failed to notify the appellant of such condition, that the railroad company was guilty of negligence which would preclude a recovery in this action.

In 36 C.J. at page 208, it is said: "A landlord's failure to notify his tenant of:

defects in the premises does not render him liable for injuries therefrom, where the landlord does not acquire such knowledge until after the lease is made."

In the case of Holzhauer v. Sheeny, 127 Ky. 28, 104 S.W. 1034, the Court of Appeals of Kentucky held as follows: "Landlord's failure to notify his tenant of defects in the premises does not render him liable for injuries therefrom, where the landlord does not acquire such knowledge until after the lease is made."

Whatever information the employees of the railroad company had with reference to the defects of the lights in the west end of the building was gained, as this record shows, in December, 1933, long after the original lease was made between the parties, and some months after the supplemental lease was made.

The appellant makes several attacks upon the manner and form of the submission of special issues 1 and 2 by the trial court. Such issues sought a finding from the jury as to what cars were damaged by fire and whether the cars were placed on the track for the use and benefit of, or upon the request of, appellant. As to seven of the eight cars which the jury found were on the track, the appellant's witnesses admitted that there was no question but that they were on the track for the use and benefit of the appellant. There is a plat in evidence, which, when read in connection with the testimony of the witnesses, shows and identifies the particular cars which appellant admits were on the track for its benefit. The appellant makes no attack upon the verdict of the jury in connection with their finding and cannot well do so.

■ The appellant does complain of the action of the court in awarding damages on account of the destruction of P FE car No. 8775, on the ground that the jury found the car to be No. 8778. It is observed that the car was described in the pleadings and throughout the record as No. 8775, but it appears that Mr. Otto, one of appellee's witnesses, described the car as No. 8778, and that number was used when issues were submitted to the jury. The trial court found this to be a typographical error. It seems to us that there can be no confusion or misunderstanding with reference to this car, for the reason, as appellee points out, that it was the only car with the first three numerals 877; besides, a part of the testimony shows that it was in fact PFE car No. 8775.

■ Appellant also complains by its 82 propositions that because the S. P. box car, for the destruction of which the appellee brought suit, was described in its pleadings as No. 29599, and because the jury's finding and the judgment of the court described the car as No. 28599, there could be no recovery for this car. The box car was described as No. 29599 in the pleadings of the appellee, upon which it went to trial, and in all the formal proof made by appellee on the trial; but the witness Otto described the car as No. 28599, and it was so described by the trial court in the submission of the issue to the jury. It is noted however that the car under consideration was the only S. P. car in the entire number of cars, and the only box car among all the cars involved. The appellant's witnesses, or at least one of them, Frank Smith, testified that the day before the fire he ordered in a carload of shooks, which was a Southern Pacific box car; and further testified it was the only box car standing on the spot. We think, under all of the record before us, that there could be no misunderstanding about all concerned having reference to the one and only Southern Pacific box car, and that the court did not err in allowing a recovery for it.

■ By bill of exception No. 5 appellant complains of the action of the trial court in permitting the communication between the court and the jury, as shown by such bill. It is shown that after the jury had retired to consider their verdict the foreman of the jury communicated with the court, advising that the jury desired to have certain testimony adduced upon the trial read to them, and that thereupon, counsel for both parties being present in court, the parties agreed that the jury might be brought from the jury room into the courtroom, take their places in the jury box, and verbally communicate with the court. In stating to the court the evidence which they wished to hear, the foreman stated that the jury wanted the contract, which was the lease contract between the appellant and the railroad company. The court then told the foreman of the jury that he did not consider it a proper matter for the jury to have; that the interpretation of the lease contract was a question of law and not of

fact and that there was no question submitted to them by the court the answer to which would be assisted in any manner by the terms of the lease contract. That to the extent that the lawyers argued that the jury could be assisted in answering the questions by reference to the contract such argument was in error. That the jury would have to determine the questions of fact from the evidence before them, the testimony of the witnesses, and the other documentary evidence with reference to the facts in issue.

The appellant objected, as shown by the bill, asserting that "said remarks tend to confuse the jury, go to the weight of the evidence and are immaterial and irrelevant to the issues in the case and prejudicial to the defendant." The appellant did not move the court to withdraw his remarks from the jury. We perceive no error in the action of the trial court.

In the case of Smyth v. Caswell, 67 Tex. 567, 4 S.W. 848, 851, it is held: "It was proper for the court to direct the jury to the very issue to be determined, and to instruct them as to what evidence they might look to in coming to a decision upon it."

The remarks of the court in this case cannot be construed as having reference to either side. The position of the trial court is a very important one, and in order to properly function in the disposition of litigation he is given a wide latitude in the conduct of the trial of a cause. Here the counsel for both parties agreed that the jury might come into open court to communicate with the court, which was done, and we agree with the trial court that the lease contract was not to be construed by the jury, but was one of construction for the court. We think there was no error in the trial court's action.

The appellant complains of the refusal of the trial court to permit its counsel to make certain argument. It would prolong this opinion for us to recite the argument attempted to have been made and the ruling of the trial court thereon. We think it is sufficient to say that we have examined all of the complaints of appellant and the rulings of the trial court thereon, and are of opinion that the trial court did not commit reversible error. A party litigant has a right to be heard through the argument of his counsel so long as the argument is confined to the issues in the case. Wheth-

er or not the argument is legitimate depends, of course, upon the record made in each and every case, but, in order for the trial courts to proceed with the disposition of litigation and to maintain the proper decorum, a wide latitude of discretion is given to a trial court, and appellate courts will reverse only where it is shown that the trial court has clearly abused that discretion. We are of opinion that the appellant has failed to show that the trial court in the trial of this case abused his discretion, with reference to his ruling on the question of the argument made by appellant's counsel.

Appellant, by many assignments and propositions, complains of the exclusion and admission of certain evidence. We have examined each and every assignment and all of the propositions relating to the exclusion and admission of evidence, together with appellant's objections. We are of opinion that no reversible error is shown.

The appellant having failed to show any reversible error, it follows that all of its propositions should be, and are, overruled, and the judgment should be affirmed. It is so ordered.