FRIGID FLUID CO. v. SID WESTHEIMER CO. (No. 604.)

(Court of Civil Appeals of Texas. El Paso. Oct. 26, 1916. Rehearing Denied Nov. 16, 1916.)

1. ESTOPPEL ⬅119—PEREMPTORY CHARGE—QUESTION FOR JURY.

When an estoppel or waiver is pleaded and supported by evidence, it is a valid objection to peremptory charge for the other party, and such issue should always be submitted to the jury.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 309; Dec. Dig. ⬅119.]

2. APPEAL AND ERROR ⬅1062(5)—HARMLESS ERROR—SUBMISSION OF ISSUE—IMMATERIALITY.

Where the seller of embalming fluid warranted it to be good for the purpose intended and the buyer pleaded breach of such warranty, it was immaterial what the value of the fluid was at the point of shipment, and any alleged error in submitting the issue of such value is harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4218; Dec. Dig. ⬅1062(5).]

3. TRIAL ⬅350(2)—SUBMISSION OF ISSUES—EVIDENTIARY FACTS.

In submitting cases upon special issues, the court should submit the ultimate issue, and not issues evidentiary thereto.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 828, 832; Dec. Dig. ⬅350(2).]

4. SALES ⬅447—BREACH OF WARRANTY—SUBMISSION OF ISSUES—EVIDENTIARY FACTS.

In action by seller of embalming fluid for purchase price, defended on the ground of breach of warranty, refusal to submit issue as to manner of use of fluid was not error, the manner of use being only evidentiary on the issue of breach of the warranty.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1318; Dec. Dig. ⬅447.]

5. SALES ⬅447—BREACH OF WARRANTY—SUBMISSION OF ISSUES — EVIDENTIARY FACTS.

Refusal of special issue whether such fluid would produce satisfactory results on the bodies of dead mulattos was not error, where the fluid was sold for general use.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1318; Dec. Dig. ⬅447.]

6. APPEAL AND ERROR ⬅1062(5)—HARMLESS ERROR—SUBMISSION OF ISSUES.

Although admission of testimony of witness that embalming fluid had no market value was erroneous, the error was harmless, where the issue was on breach of warranty and not market value.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4218; Dec. Dig. ⬅1062(5).]

7. SALES ⬅448 — BREACH OF WARRANTY—RIGHTS OF PARTIES.

Under contract for sale of embalming fluid by which the seller furnished an embalming table free of charge and the court declared rescission for breach of warranty of fluid, judgment for seller for value of the table was erroneous, where purchaser offered return of the table.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1319; Dec. Dig. ⬅448.]

Appeal from Harris County Court; Clark C. Wren, Judge.

Action by the Frigid Fluid Company against the Sid Westheimer Company. Judgment for plaintiff in part, and plaintiff appeals. Reformed and affirmed.

Hunt, Myer & Teagle and Rodman S. Cosby, all of Houston, for appellant. Guynes & Colgin, of Houston, for appellee.

WALTHALL, J. This suit was brought on a written contract in the county court at law by the appellant, Frigid Fluid Company, against the appellee, Sid Westheimer Company, to recover the purchase price of 40 cases, or 960 bottles of an embalming fluid known as Frigid Fluid. The contract is in the form of an order for goods; its date is September 5, 1911; order is to ship to appellee at Houston, Tex.; to be shipped at once; the price is stated to be $16.20 per case, first payment $25, due February 1, 1912, and $25 monthly until paid; 5 per cent. discount. The order includes one table, $95, gratis. It is alleged that the goods were delivered to the Atchison, Topeka & Santa Fé Railway Company, at Chicago, Ill., consigned to appellee; that the goods were shipped during the months of October and November, 1911, and were received in good condition and accepted by appellee and used for many months; that appellee had paid $51.08 of the total price, and defaulted as to the balance;

that the embalming table was delivered gratuitously, provided appellee would pay for the fluid; that prior to the time of this sale, appellee had bought and used goods similar to the goods sued for. Appellee admitted the execution of the written order, but denied that it evidenced the entire agreement, and alleged that appellant's agent, making the sale, had made certain representations as to the quality, fitness, and efficiency of the fluid for the purposes for which it was known the fluid was to be used; that said agent warranted the fluid to be of the very finest and highest quality, and fit in every way for embalming dead human bodies; the same would give appellee satisfaction, and could be returned if unsatisfactory or not as represented; that said warranties and representations were material and the inducing cause of the sale; that appellee relied thereon; that the fluid was absolutely worthless for the purpose of embalming dead human bodies —and pleaded a breach of warranty. Appellee prayed for a rescission, and tendered back the unused fluid and table, and offered to pay the contract price for the used portion of the fluid, and in the alternative, if rescission were denied, that appellant take nothing because of a total failure of consideration, and recovery of the $51.08 and the freight charges paid by it, and in the alternative for damages in offset to the contract price for partial failure of consideration. Appellee admitted in its pleadings that it had used at least eight cases of the fluid; that about August 1, 1912, it had offered to return the remainder of the fluid and the table on discovering the unfitness of the fluid. Appellant pleaded that appellee, by using the fluid for so long a period, had waived any right to return same and was estopped to deny its liability for the purchase price. The case was tried before a jury, and submitted upon special issues. The issues and answers are as follows:

"(1) Do you believe from a preponderance of the evidence that the fluid which plaintiff shipped to defendant, and which has not been used, would perform the service of embalming dead bodies in a satisfactory manner, if properly used by a skilled embalmer, or do you not? Answer: We do not.

"(2) Do you or do you not believe from a preponderance of the evidence that the said fluid that has not been used by defendant had any value for use as an embalming fluid in Houston, Tex., at the time it was shipped by plaintiff to defendant in Houston? Answer: We do not.

"(4) Do you or do you not believe from a preponderance of the evidence that said fluid that has not been used by defendant had any value for use as an embalming fluid in Chicago, Ill., at the time it was shipped by plaintiff to defendant? Answer: We do not.

"(5) How many bottles of said fluid which plaintiff shipped to defendant have been used by defendant? Answer: 264 bottles.

"(6) What was the reasonable market value of the table mentioned in the testimony in Chicago, Ill., at the time it was shipped to defendant? Answer: $90.00."

Thereupon the court entered this judgment: In favor of plaintiff against the defendant for the sum of $239.11, being the amount due at the contract price for 11 cases (264 bottles) of the fluid used by defendant, and $90 for the table, plus interest to date of judgment; that plaintiff also recover of the defendant the remaining 29 cases of fluid now in defendant's possession, and in the event defendant failed or refused to deliver same to the plaintiff within ten days, that plaintiff, in that event, should also recover of defendant the sum of $469.80, being the value of the remaining cases of the fluid at the contract price. From this judgment, the plaintiff appealed.

[1] Appellant's first ground of error is directed to the refusal of the court to give a peremptory instruction to find for appellant for the full amount of its claim, on the ground that appellee had waived any right to return the goods, and by using about one-third of the entire goods was estopped to assert that they were of no value. It is a valid objection to the giving of a peremptory charge, when the evidence raises an issue of waiver or estoppel; it being a question of fact. The issue should have been submitted to the jury. In this case, appellee pleaded that the "fluid was worthless at the very time and moment of its delivery to said railway company," and "unfit for use and worthless, and was not then or at any time in good and mercantile condition, and was at all times unfit for the preparation of dead human bodies for burial," and states the reasons why the fluid was worthless. There was evidence offered to sustain these allegations. Westheimer said:

"If Frigid Fluid was good fluid, it was worth it ($8.10 per dozen bottles) but in the condition this was, it wasn't worth anything; it wasn't fit for use; it would be a detriment to my business. * * * I discontinued making further monthly payments as I agreed to do because my embalmers complained to me that the fluid wasn't doing the proper work."

Fogel said:

"There were instructions given by the Frigid Fluid Company as to how this particular fluid should be used. I followed those instructions in embalming these bodies. This fluid made the bodies that were embalmed with it kind of ashy. * * * All those which I embalmed which we held would turn a dull grayish, or putty-like color. * * * This wasn't good fluid."

Other witnesses testified to practically the same. The appellee alleged and offered proof to the effect that an agent of appellant represented and warranted the fluid to be of the highest grade and quality, and fit in every way for the purposes and uses of embalming dead human bodies. The jury found that the fluid was worthless for the purpose of embalming dead human bodies.

In the case of Hayden et al. v. Houghton et al., 24 S. W. 803, an action by the seller against the purchaser of cigars, sold by an agent or drummer, in which the purchaser alleged that the goods were purchased under a

warranty that they were good, merchantable, and salable cigars, and that after delivery the purchaser discovered that the cigars were of no value and were worthless, and for that reason they were not liable for the contract price or for any sum, and where there was evidence tending to establish the issues presented, and there was evidence tending to show that after the cigars were received the purchaser used some of them and, after discovering that they were worthless, offered to return them, the Court of Civil Appeals for the Third District said:

"Whether the warranty was waived, or the cigars were accepted in such a manner as to constitute a waiver of the warranty, were questions of fact that the jury should have been permitted to determine under all of the evidence before them, accompanied with proper instructions from the trial court. The law does not undertake to say that certain acts shall bring about a waiver of the warranty, or that certain acts will constitute an acceptance of the article sold; and, in the absence of a declaration of law to that effect, the court should permit the jury to ascertain these issues from all of the facts before them."

To the same effect is Brantley v. Thomas, 22 Tex. 275, 73 Am. Dec. 264; Wright v. Davenport, 44 Tex. 165; Evans v. Goggan, 5 Tex. Civ. App. 129, 23 S. W. 854. The requested peremptory instruction should not have been given, and the assignment is overruled.

[2] The second error assigned is to the action of the court in submitting issue No. 4, it being asserted that the evidence as to the value of the fluid at Chicago, Ill., was undisputed, and it was therefore error to submit any such issue to the jury. It is not apparent to us what pertinency the issue indicated had. Under the issues raised by the pleadings, the value of the fluid in Chicago was immaterial. The issue raised by the defendant's pleading was that representations and warranties had been made respecting its fitness and efficiency for embalming human bodies after death; that the same were material, were relied upon and induced the purchase of the fluid, and that the fluid did not come up to the representations and warranty made respecting it. This was the vital issue in the case. Market values of the property in Chicago or any other place were wholly irrelevant. If the defendant failed to establish his defense as pleaded, he was liable for the contract price. If he did establish the truth of his allegations, respecting the warranty and representations, he was not liable for anything unless he failed to return the unused fluid. Any supposed error, therefore, with reference to the fourth special issue is harmless, as it was an wholly irrelevant issue.

[3] The third assignment complains of the refusal to submit this issue:

"Could a careful and experienced embalmer use embalming fluid, such as is contained in the eighty dozen bottles sold by plaintiff to defendant, in the abdominal cavity of a corpse and use some other fluid in the arteries and thus both preserve the corpse and prevent an ashy color of the corpse?"

The issue was properly refused. It related to an evidentiary fact. In submitting cases upon special issues, the court should submit the ultimate issue, and not issues evidentiary thereto. It might be that a careful and experienced embalmer might have used the fluid in the abdominal cavity of a corpse and used some other fluid in the arteries, and thus preserve the corpse and prevent an ashy color thereof, and yet it would not necessarily follow that the Frigid Fluid sold defendant was altogether an efficient embalming fluid. Indeed, it would seem to show its unfitness and inefficiency if it could only be used in the abdominal cavity and some other fluid had to be used in the arteries.

[4] In the fourth assignment, complaint is made of the refusal of this issue:

"In all the bodies upon which defendant and its embalmers used the frigid fluid purchased in the fall of 1911, was all of the blood removed from the veins and surface tissues?"

This, likewise, submitted an evidentiary fact and not an ultimate issue. The answer to this issue, whether in the affirmative or in the negative, would have tended merely to prove or disprove the truth of the allegations respecting the unfitness of the fluid. It would not necessarily control the issue, and there was no error in refusal to submit the issue.

[5] The fifth assignment complains of the refusal to submit this special issue:

"Will the embalming fluid sold by plaintiff to defendant in October and November, 1911, when used carefully upon the bodies of dead mulatto negroes, produce satisfactory results as to the preservation of the body, and the color of the body?"

This, likewise, would be merely an evidentiary issue. The fluid was not bought for the special purpose of embalming dead mulatto negroes, and the warranty was not restricted to its effect upon such corpses. A finding of satisfactory results when used upon such bodies would not conclude the issue as to its fitness and efficiency generally as an embalming fluid.

[6] Error is next assigned to the refusal of the court to strike out the testimony of the witness Settegast, to the effect that fluid which would turn the face of a corpse a dull grayish or putty-like color had no market value, the ground of the objection being that the witness had never bought or sold any such fluid, and did not know of any such sale, and therefore was not qualified to testify to the market value of such fluid.

As we have indicated above, the question of market values is wholly irrelevant in this case. Had the objection been made that such testimony was irrelevant, it would have been well taken, but none such was urged, and, as to the particular objection urged, the testimony of the witness shows that he had been in the undertaker business for a long time, and was well qualified to testify respecting

embalming fluids; and we think there was no error in admitting his testimony, as against the particular objection urged; and, if it was error, it was harmless, as it related to an irrelevant issue which seems to have been raised by the parties.

For the reasons indicated, we are of the opinion that appellant's assignments of error should all be overruled.

[7] Appellee presents a cross-assignment, complaining of the action of the court in rendering judgment against it for the value of the table. This cross-assignment is well taken, and should be sustained. From an inspection of the issues submitted to the jury, it is apparent that the controlling issues in this case, respecting the warranty relied upon by the defendant, was not submitted to the jury. It must be assumed that the same were resolved by the court in favor of the appellee, as the judgment which was rendered can be accounted for in no other way. The effect of the court's judgment was to rescind the contract in so far as concerned the 29 cases which defendant had on hand. As to those cases, the decree was that the plaintiff should recover the same from defendant; and, in the alternative, for its value, if the defendant failed to deliver said cases. If the defendant had the right to rescind as to those 29 cases, it also had the right to rescind as to the table. It tendered a return of the table with the unused fluid. The judgment, therefore, should have been in favor of the plaintiff for the value at the contract price of the 11 cases used by defendant, with interest, less the credit of $51 which had been paid by the defendant, and for the return of the 29 cases and the table, and, in the alternative, for the value of said 29 cases and table at the contract price, if the same was not returned by defendant.

The judgment is so reformed, and, as reformed, affirmed.