TEXAS CITY TRANSP. CO. v. WINTERS.
(No. 7321.)

(Court of Civil Appeals of Texas. Galveston. Feb. 27, 1917. Rehearing Denied March 22, 1917.)

1. APPEAL AND ERROR ⬅➡218(2)—EXCEPTIONS —SENDING JURY BACK FOR CORRECTION OF FINDINGS.
Sending jury back to correct a special verdict without informing counsel, who is present in open court, of the contents will not be avail-able as error, in the absence of objection or exception thereto at the time.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1320, 1321, 1323; Trial, Cent. Dig. § 875.]

2. RELEASE ⬅➡17(2)—INJURIES TO SERVANT— RELEASE—DUTY TO INVESTIGATE.
Where a servant because of reliance on false representations signs a release for damages for personal injuries the release is invalid, though he did not read it before signing.
[Ed. Note.—For other cases, see Release, Cent. Dig. § 32.]

3. MASTER AND SERVANT ⬅➡281(3)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.
In an action by a servant for injuries sustained while working in a ditch, evidence examined, and held not to show that he was charged with duty of curbing walls of ditch or securing material for that purpose, so as to relieve the employer from discharge of that duty.
[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 987.]

4. TRIAL ⬅➡350(1) — PROVINCE OF JURY — ISSUES.
Special issues, not supported by evidence, should not be submitted to jury.
[Ed. Note.—For other cases, see Trial, Cent. Dig. § 828.]

5. TRIAL ⬅➡260(1)—INSTRUCTIONS—REFUSAL TO GIVE INSTRUCTION COVERED BY CHARGE.
Refusal to give an instruction covered by a given instruction is without prejudice.
[Ed. Note.—For other cases, see Trial, Cent. Dig. § 651.]

6. TRIAL ⬅➡350(2)—SUBMISSION OF ISSUES— EVIDENTIARY ISSUES.
It is the duty of the court to submit ultimate issues, and not issues incidental and evidentiary thereto.
[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 828, 832.]

7. APPEAL AND ERROR ⬅➡1051(1)—ADMISSION OF HEARSAY TESTIMONY—HARMLESS.
In an action for injuries sustained by a servant while working in a ditch, refusal to strike out hearsay testimony as to condition of wall of ditch, there being direct evidence of the same, held without prejudice.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161, 4162, 4165, 4166.]

8. WITNESSES ⬅➡392(1)—IMPEACHMENT—INCONSISTENT STATEMENTS.
File marks, excerpts, etc., of plaintiff's former pleadings, containing no admission or declaration against his interest or contradicting anything to which he has testified, are not competent for purposes of impeachment.
[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1249–1251.]

9. EVIDENCE ⬅➡471(11) — CONCLUSIONS OF WITNESS.
A witness' testimony that he would not have signed a paper had he known it was a release for his injuries is not a conclusion, but a statement of fact.
[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2161.]

Appeal from District Court, Galveston County; E. F. Harris, Special Judge.

Action by C. E. Winters against the Texas City Transportation Company. Judgment for plaintiff, and defendant appeals. Affirmed.

---

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

W. T. Armstrong and Eugene A. Wilson, both of Galveston, for appellant. Frank S. Anderson and Aubrey Fuller, both of Galveston, for appellee.

GRAVES, J. Appellee filed this suit in the district court of Galveston county for the Tenth judicial district against appellant, seeking recovery of damages by reason of certain personal injuries, alleged to have been received by him by the negligence of the appellant, by reason of the caving in of a ditch or excavation in which the appellee was engaged in work as an employé of the appellant, the injury occurring on January 8, 1915. By his third amended original petition, on which trial was had, plaintiff alleged that, on or about the 8th day of January, 1915, the plaintiff was in the employment of the defendant at Texas City, Tex., as a carpenter, and in the course of his said employment, the defendant, by and through its agents, servants, and employés, by whom the plaintiff was being directed as to his said work and employment, ordered and directed plaintiff to enter and work in an excavation in the earth made by the defendant, which excavation was about 40 feet long, 12 feet wide, and 9 feet deep; the work plaintiff was directed to perform consisting of making and placing forms in the said excavation, constructed of plank for footing therein. Appellee alleged as ground of appellant's negligence, as follows:

"That the defendant, its agents, servants, and employés, in charge of and directing the said work, in violation of its said duties and obligations, carelessly and negligently failed and neglected to exercise ordinary care to furnish the plaintiff with a reasonably safe place to work, or to make any inspection of the said excavation whatsoever, or of the walls thereof, and carelessly and negligently failed and neglected to inspect and observe the weakened and dangerous condition of the walls of said excavation, which might have been observed by the exercise of ordinary care, and which was known to the defendant and its said agents, servants, and employés in charge of and directing the work of said excavation, or to properly and safely curb the same so as to prevent the said walls from caving in and injuring the plaintiff and the other employés of the defendant, and also carelessly and negligently failed and neglected to furnish any material or labor with which to curb the said excavation, and carelessly and negligently failed and neglected to inform the plaintiff of the weakened and dangerous condition of the walls of the said excavation, and which was well known to the defendant and its said agents, servants, and employés in charge of and directing the said excavation."

Then follows the allegation that while performing his duties the ditch caved in, and great quantities of earth fell upon him, injuring him in the manner set out. It was further alleged that appellant was, at all times mentioned in said suit, within the purview of the Texas Employers' Liability Act (chapter 179, Acts 33d Legislature of Texas). Appellant answered by general demurrer, general denial, and pleaded specially that the work was being prosecuted by it

lawfully, carefully, and properly, and that caving was not due to any want of care, but was an accident. It further specially pleaded that the plaintiff was a carpenter foreman for defendant, and was in charge of and responsible for the carpenter work in progress in the excavation, including the duties and work of properly curbing and bracing the excavation; that if injuries alleged by plaintiff were due to any negligence, it was that of the plaintiff himself; that the plaintiff undertook these duties with full knowledge of existing conditions, and assumed the hazard and risks incident to the work of which the caving of the wall was part. Appellant further specially pleaded generally the contributory negligence of the appellee, and also pleaded in bar a release executed by appellee to the appellant of all claims, demands, and causes of action against it growing out of the alleged injuries. Appellee, by supplemental petition, denied the allegations of the answer, and specially pleaded as follows:

"(b) The plaintiff denies that he has any knowledge or information sufficient to form a belief as to whether he executed and delivered to the defendant a release evidenced by a written statement dated January 22, 1915, as alleged and set forth in the said paragraph of the defendant's said answer, and therefore demands strict proof thereof, and in that connection he says that, on or about the 22d day of January, 1915, the defendant was indebted to him for work, labor, and services, and that he was directed to go to the office of the defendant in Texas City, and get a check for his said services; that he did go to the office of the defendant aforesaid, and that the defendant, its agents, servants, and employés, presented to him a paper which he was informed by the defendant and its said agents, servants, and employés, was a pay check or voucher, and asked him to sign it; that, relying upon said statement, the plaintiff did not read said paper, and, without any other knowledge or information as to its alleged contents, signed his name thereto, and received pay for the said services, and no more; that if it should now appear that the paper signed by the plaintiff, as aforesaid, was a release of the damages sustained by the plaintiff as alleged and set forth in the defendant's said answer, it was obtained by the defendant and its said agents, servants, and employés through deception, fraud, and by means of false and fraudulent representations upon the part of the defendant and its said agents, servants, and employés, viz., that the paper which the plaintiff was asked to sign, as aforesaid, was falsely and fraudulently stated and represented to him to be a pay check or voucher, which statement the defendant and its said agents, servants, and employés well knew to be untrue, and which plaintiff believed and relied upon, and for that reason did not read said paper and alleged release, and had no knowledge or information that he was signing a release, as alleged, if in fact any such release was ever signed and executed by him, which the plaintiff does not admit, and he alleges that the said alleged release is, and was, void for want of any consideration whatsoever.

"(c) That at the time of signing said paper, under the circumstances aforesaid, the plaintiff had sustained, and was severely suffering from the injuries he had received as alleged in his petition herein, all of which was well known to the defendant, its agents, servants, and employés, and that the defendant never paid the plaintiff any consideration whatsoever for the

execution of any alleged release, or for a release of the damages he sustained by reason of said injuries, and never informed the plaintiff that any such release was desired, and that any paper the plaintiff signed at the request of the defendant, its agents, servants, and employés, as aforesaid, or any other paper, was a release of such damages; that if any such release was obtained by the defendant from the plaintiff, which the plaintiff does not admit, it was, and is, wholly void for want of any consideration whatsoever."

The case was tried before a jury, to whom it was submitted upon special issues, and upon filing of verdict, judgment was entered in favor of appellee in the sum of $5,000. From that judgment this appeal is prosecuted.

So much only of the pleadings and proceedings in the trial court has been and will be herein stated as is deemed essential to the determination of the questions presented.

No complaint is made in this court as to the extent of the injuries, nor that the verdict is excessive; but the assignments are all addressed to the court's action in giving or refusing charges, or in admitting or excluding evidence, relating to other matters.

Before discussing in detail the different questions thus raised, we insert special issues 1 to 9, inclusive, as submitted by the court, together with the jury's answers, as follows:

"(1) Did the defendant exercise reasonable care to furnish plaintiff a safe place to work? Reasonable care means the care an ordinarily prudent and cautious person would use under the same or similar circumstances. Answer Yes or No." To which the jury answered, No.

"(2) Was plaintiff guilty of negligence proximately contributing to his own injuries? Negligence means the failure to exercise that degree of care which would be exercised by a person of ordinary prudence under the same or similar circumstances. Answer Yes or No." To which the jury answered, No.

"(3) Was the injury to plaintiff due to risks ordinarily incident to his employment? Answer Yes or No." To which the jury answered, No.

"(4) Was plaintiff told by Field that the release was· a pay check or voucher? Answer Yes or No." To which the jury answered, Yes.

"(5) Did plaintiff sign said release relying on a statement of Field, if any statement there was, that the release was a pay check or voucher? Answer Yes or No."· To which the jury answered, Yes.

"(6) Did Stevens read said release to plaintiff before the plaintiff executed the release? Answer Yes or No." To which the jury answered, No.

"(7) Did plaintiff know he was signing a release of his claim for personal injuries when he signed .the release? Answer Yes or No." To which the jury answered, No.

· "(8) If you have found from the evidence that plaintiff signed said release relying on a statement of Field that it was a pay check or voucher, then do you believe from the evidence that plaintiff was guilty of negligence in thus relying upon such ·statement of Field? Answer Yes or No." To which the jury answered, No.

"(9) If you answer question No. 1 with the word, 'No,' then ·were the injuries to the plaintiff caused by the failure of the defendant to so exercise reasonable care to furnish plaintiff ·a safe place to work? ·Answer Yes or No." To which the jury answered, Yes. .

Assignments 1 to 5, inclusive, in varying forms, contend that the court erred in instructing the jury that the answer in response to special issue No. 18 was not determinative, and in directing them to retire and write something in addition thereto ; while assignments 6 and 11 to 14, inclusive, in similar manner complain of the·court's entering judgment for appellee upon the jury's final findings relating to the alleged release. Since this grouping of the named assignments shows the questions thereby raised to be very closely related, if not in fact interdependent, they will be treated together.

Said special issue No. 18, together with appellant's bill of exceptions and the court's qualification of the bill upon which its said contention in this court is based, reads as follows:

"If you have answered 'No' to issue No. 7, then you will find whether or not he could have known he was signing such release by the exercise of such care as a person of ordinary prudence would have exercised for his own protection in the same or similar circumstances."

"Defendant further shows to the court that on Saturday afternoon, January 8, 1916, after the jury had retired to consider the cause upon the special issues submitted to it, the said jury returned into court a special verdict in which it found 'No' in response to the aforesaid special issue No. 7, and found 'No' in response to special issue No. 8, and found 'Yes' in response to special issue No. 18. That upon returning said special verdict into court the foreman of said jury handed the said special verdict, containing, among others, the findings hereinbefore set forth, unto the clerk of the court, who handed the same immediately unto the judge of the court, who thereupon examined the same, and, without reading the said special verdict aloud, or causing the same to be read aloud, and without advising or informing counsel in the case and especially counsel for defendant, who was present in open court at said time, of the contents of said special verdict, simply handed the said special verdict back to the jury and orally stated to the said jury that its answer to said special issue No. 18 was not determinative, and they would have to retire and write something additional in response thereto, whereupon the said jury retired and after further deliberation returned into court its same said verdict, having written after its findings of 'Yes' upon special issue No. 18 aforesaid the following additional words: 'He could have known if he had personally read the release or had some one read it for him.' Whereupon the judge of the court received the same in open court and caused it to be read in open court by the clerk, and to be filed as the verdict of the jury in this cause."

The court's qualification of the bill is as follows:

"Examined and approved this 20th day of April, 1916, with the explanation and qualification that counsel for defendant was present in the courtroom at the time of each of the transactions complained of and remained silent, making no verbal or written objections at the time of said transactions, nor until after the rendition of the verdict against defendant."

Appellant very vigorously assails this action of the court in sending the jury back to "write something additional in response to said special issue No, 18," contending that it was an invasion of the province of the jury and beyond the power of the· court;

while, upon the other hand, appellee as earnestly contends that such action was not only within the power of, but was the bounden duty of, the court under articles 1980, 1981, Vernon's Sayles' Civil Statutes of 1914. We find it unnecessary to determine that question, for two reasons:

[1] First. The quoted bill of exceptions shows that appellant's counsel, though present in the courtroom at the time of each of the transactions complained of, remained silent, and made no verbal nor written objection at that time, nor until after the rendition of the verdict against it. We think appellant should have made any objection it had to the action of the court at the very time, since it is shown that it had ample opportunity to do so, and that it may not be permitted, by its silence then, to acquiesce in this transaction, thus in a measure speculating upon the probable verdict of the jury, and then afterwards take advantage of it for the first time in a motion for a new trial. Vanwey v. State, 41 Tex. 639; Bourland et al. v. Schulz, 39 Tex. Civ. App. 572, 87 S. W. 1167, 1168; Zarate v. Villareal, 155 S. W. 328.

[2] But there is, we think, a far stronger reason for holding that this action of the court was not prejudicial to appellant. In this connection it may be stated that, while there was a sharp conflict in the testimony, the evidence sustained the finding of the jury upon said special issues 4 to 7, inclusive, relating to and embodying the issue of fraud in the execution and delivery of the alleged release. Recurrence to the quoted part of his petition will show that the appellee alleged positive fraud in the execution of the release; and, that issue having been submitted to and, as just stated, found by the jury in their answers to special issues 4 to 7, inclusive, in favor of the appellee, we think the question of appellee's negligence in not protecting himself by reading, or having read to him, the release, becomes immaterial; in other words, the finding of the jury, upon sufficient evidence, that the active and positive fraud alleged was practiced upon him, and that he relied upon the representations of appellant's agents in making it, as we hold he had a right to do under the circumstances shown here, the question of his negligence in signing the release without reading it, or having it read to him, passed out of the case. This is so, because the legal effect of the first finding eliminated the issue embodied in the second; nor do we think the fact that both parties requested the submission of this immaterial issue affects in the least this result. Hill v. Hoeldtke, 104 Tex. 594, 142 S. W. 871–872, 40 L. R. A. (N. S.) 672; I. & G. N. Ry. Co. v. Berthea, 179 S. W. 1087; Lofland v. Greenwood, 181 S. W. 517, 519; Thornton et al. v. Goodman, 185 S. W. 926, 929.

In support of its contention that it devolved upon appellee to show himself free of negligence in executing the release, appellant

cites M., K. & T. Ry. Co. v. Craig, 44 Tex. Civ. App. 583, 98 S. W. 907, and Williams v. Rand, 9 Tex. Civ. App. 634, 635, 30 S. W. 509, but when applied to the facts here, those cases in no manner sustain the position; as is said in Railway v. Craig Case, 44 Tex. Civ. App. at page 585, 98 S. W. at page 908:

"The evidence fails to show that said agents fraudulently concealed the contents or prevented plaintiff from reading the same, by making any false statement or doing any act that induced plaintiff to sign said instrument without knowing the contents thereof."

It is unnecessary to repeat that the positive fraud found by the jury here makes a very different case. The case at bar is determined by the principle so clearly stated by our Supreme Court through Justice Stayton in Labbe v. Corbett, 69 Tex. 503, 6 S. W. 809, as follows:

"The misrepresentation alleged to have been made was one material in character, and, if made, calculated to prevent an examination by the appellant for himself, to ascertain the true condition of the sheep, and it related to a matter of which the appellee, from his own statement, had actual knowledge"

—and quoting from the English case of Railway Company v. Kirsch, L. R. 2, H. L. 120, Justice Stayton continues:

"When once it is established that there has been any fraudulent misrepresentation, * * *. by which a person has been induced to enter into a contract, it is no answer to his claim to be relieved from it to tell him that he might have known the truth by further inquiry. He has a right to retort upon his objector: 'You, at least, who have stated that which is untrue * * * for the purpose of driving me into a contract, cannot accuse me of want of caution, because I relied implicitly upon your fairness and honesty.'"

In another case, in discussing the same principle, our Supreme Court has said:

"The defendant in error claims that Mrs. Conn was guilty of negligence in signing the deed of trust without reading it, and that therefore the court ought not to reform the instrument according to her testimony. If the failure to read the instrument was unexplained and there was reasonable excuse for it, this proposition would be correct, but, when the party is misled by the fraudulent representation of the other party and caused, by confidence in such person and his representations, to sign the instrument without reading it, this does not constitute such negligence as will deprive the maker of the instrument of equitable relief from the consequences of the fraudulent representations. Chatham v. Jones, 69 Tex. 744, 7 S. W. 600." Conn v. Hagan, 93 Tex. 339, 55 S. W. 323.

To the same effect are the following cases: Western Union Tel. Co. v. Walck, 161 S. W. 902–907; White v. Peters, 185 S. W. 659–661, and cases cited; Fahey v. Kaies, 181 S. W. 782, 784, 785; Barton v. Cox, 176 S. W. 793; Hammel v. Benton, 162 S. W. 35; Taber v. Eyler, 162 S. W. 490; Benton v. Kuykendall, 160 S. W. 438; Brand v. Odom, 156 S. W. 547; Willingham v. Geitzenauer, 161 S. W. 376–378.

For the reasons given, and upon authority of the cases discussed, we overrule both said sets of grouped assignments so considered together.

[3] By its seventh and eighth assignments appellant complains of the court's action in refusing to submit its requested special issues Nos. 14 and 16, the former requiring the jury to find whether or not the duty of seeing to the proper bracing of the walls of the ditch at the place of his injury was upon plaintiff; the latter requiring a finding as to whether or not it was defendant's duty to place at said ditch material to curb the walls, and, if it was, whether or not defendant failed in such duty, and if it did so fail, then, further, whether or not plaintiff himself, by the exercise of ordinary care, could have secured said material.

Both assignments are overruled, because we think it was the duty of appellant to furnish appellee with a reasonably safe place to work, which included the duty of curbing the walls of the excavation and furnishing the necessary material for that purpose, and there was no evidence of any probative force showing that appellee was charged with the duty of curbing the walls of the ditch in question, or securing material for that purpose. Indeed, it seems to us that by the mouths of its own witnesses appellant's contention under these two assignments is repudiated; the appellee Winters was employed as a carpenter, and the work being done by the carpenters was the placing of wooden footing in the excavation, preparatory to pouring the concrete; while C. A. Stevens, appellant's chief engineer, had general supervision over the entire excavation work, and appellee was working under his direction and that of C. B. Griffin said C. B. Griffin, a witness for appellant, testified:

"I know where the ditch is in which it is alleged that Mr. Winters received the injuries on January 8, 1915, while he was working therein, which ditch had been excavated by the Texas City Transportation Company, and in which the culvert was to be constructed. I don't remember the date when the carpenters went to work in this excavation; the excavation had been completed at the time they went to work in the ditch, and was completed where Mr. Winters was working at the time of the accident. I was working as labor foreman of the excavating gang, common laborers. The work in progress in that ditch at the time the accident happened was the building of forms for concrete; Mr. Winters had the supervision of those. He had some carpenters there doing the work. Mr. Stevens had general supervision over this work that was being done there; he was my superior and gave me orders what to do, prior to January 8th. I had been instructed to have this excavation made where this accident occurred; he gave me the dimensions of it and about the depth of it. Winters did not stand on the top of the bank and direct the work, he stood in the ditch; he was in the ditch that day. They had just started that end of the concrete from where Mr. Winters was working at the time the accident occurred. I was getting the material on the ground for that work under the direction and request of Mr. Stevens, who was the chief engineer."

E. V. Rhodes, a witness for the appellant, testified:

"I was superintendent of Texas City Transportation Company in the month of January, 1915. Mr. C. A. Stevens had direct charge of the work that was being done in connection with the excavation. I did not take charge of that or assume any direction of it. Mr. Stevens was in direct charge. I did not employ Mr. Winters. He was employed by Mr. Stevens. When I say that Mr. Winters was foreman in charge of the carpenter work in this excavation, I mean he was directing the carpenters who were working there with those carpenters down in the excavation."

[4] Having thus failed to substantiate the allegations of its answer, that these duties rested upon appellee, appellant was not entitled to have them submitted as issues properly raised by both pleading and proof. Article 1984a, Revised Statutes; article 1985, Revised Statutes; Black v. Wilson, 187 S. W. 493–496; Walker v. Flanary, 178 S. W. 992–993; Gulf States Tel. Co. v. Evetts, 188 S. W. 289; Rowan v. Hodges, 175 S. W. 847.

[5] We are unable to determine from the ninth assignment whether the contention under it is that appellant's requested special issue No. 13 required the submission of the question of the contributory negligence of a fellow-servant of appellee, or of the proximate cause of his injuries; but, in either event, we think it presents no error and is overruled for the reasons that the pleadings and proof brought this case within the purview of the Texas Employers' Liability Act (chapter 179, Acts 33d Leg.), which abolished the fellow-servant defense, and because the court in its above-quoted special issue No. 9 properly submitted to the jury the question of the proximate cause of the injuries alleged.

[6] By the tenth assignment exception is taken to special issue No. 1 of the court's general charge, as follows:

"Special issue No. 1 is excepted to because the subject therein condenses the whole matter of negligence into one issue, whereas a number of issues of negligence are tendered by the pleadings, not all of which are supported by proof, so that the issues should be presented so as to submit only those issues which are proper to go to the jury."

We think this assignment is without merit, because there was only one ground of negligence charged in the petition, and supported by the evidence, to wit: whether the appellant exercised reasonable care to furnish appellee with a safe place to work, in failing to curb or stay the walls to prevent caving. All other grounds of negligence were incidental to and involved in that issue, and it was the duty of the court to submit the ultimate issue, and not issues incidental and evidentiary thereto. The part of the petition charging the negligence has been hereinbefore copied, and we think it clearly supports this conclusion that only one ground of negligence was charged. Frigid Fluid Co. v. Sid Westheimer Co., 189 S. W. 334–336; Gulf States Tel. Co. v. Evetts, 188 S. W. 289–292.

[7] Very earnest and forceful contention is made under appellant's eighteenth assignment that prejudicial error against it was committed by the court in refusing its motion

to strike out as hearsay the testimony of the appellee, to the effect that Mr. Stevens and Mr. Griffin had made an inspection of the walls of the excavation about 10 o'clock on the morning of the day of the accident and had seen and were talking about the crack on the bank. The hearsay character of this testimony was not brought out until cross-examination; and, after. the witness upon re-examination had further said that on first .so testifying he had misunderstood the question, and that he had never seen Mr. Stevens or Mr. Griffin making an inspection of the walls, and that his statement to that effect was the result of what he had heard afterwards, the court overruled the motion. We think this evidence was pure hearsay, and that it should have been excluded, but we further think the error in not excluding it under the circumstances shown was entirely harmless, and was not prejudicial to any real right of appellant. This conclusion is specially fortified by the fact that the witness R. B. Jetton testified to having seen Mr. Stevens at the excavation just before the accident, and having heard him direct some Mexicans to knock out some braces, and having called Steven's attention to a crack in the bank. The testimony of Jetton was direct, and not hearsay, and the appellant could have been in no way prejudiced by the testimony complained of. It was not in support of his allegation that the walls of the ditch were in a weak and dangerous condition, which was known to appellant, and the jury was not misled or misinformed. The assignment is therefore overruled.

[8] Nor do we think, as is contended under assignments 15 to 17, inclusive, that the court erred in excluding the tendered evidence consisting of the file marks, excerpts, etc., of plaintiff's former pleadings. We think this proffered evidence was incompetent and immaterial, because it contained no admission or declaration by appellee against his interest, and neither tended to contradict anything he had testified to, nor any statement made by him in the pleadings. Hence there was no error in its exclusion, and the three assignments are overruled.

[9] The nineteenth assignment alleges error in permitting the plaintiff to testify, over the objection of the defendant, that if he had had any knowledge that the paper he was signing was a general release of his injuries, he would not have signed it. It was entirely competent, we think, for the plaintiff to testify that if he had known that the paper he was signing was a general release of his injuries, he would not have signed it; he did not testify as to what he thought he would have done on some previous occasion, but stated as a fact what he would not· have done; that is, have signed the release, if he had known that it was in fact a release and not what he then supposed it to be, to wit,

merely a voucher for the amount of actual wages then due him.

We have thus very carefully considered every question presented by appellant under all of its assignments, and, having reached the conclusion that no reversible error has been pointed out by it, each and every assignment is overruled.

The judgment of the trial court is affirmed.

Affirmed.