## HOUSTON COMPRESS CO. v. HOUSTON STEEL & FOUNDRY CO. (No. 8290.)

Court of Civil Appeals of Texas. San Antonio. Dec. 11, 1929.

Fulbright, Crooker & Freeman, of Houston, for appellant.
A. D. Dyess, of Houston, for appellee.

COBBS, J. Appellee sued appellant to recover $9,500 balance alleged to be due by appellant on an alleged rental contract. Appellant was engaged in the business of a warehouseman, and was desirous of obtaining property belonging to appellee in which to store its goods. The agreement was to rent appellant the property north of the railroad track for $10,000. Appellant answered by a general demurrer, several special exceptions, and by a special answer. The case was tried with a jury, to whom the case was submitted, and it found that Quick, representing appellee, and Scott, representing ap-

pellant, made a contract whereby all of appellee's property was leased to appellant for $19,500, and on motion, upon findings of the jury, the court entered judgment for plaintiff in the sum of $9,927.86.

In making the contract, Charles E. Quick acted for appellee, and J. V. Scott acted for appellant. The letter referred to, upon which Mr. Freeman acted in preparing the contract, is as follows:

"P. O. Drawer No. 789

"Houston Compress Company, Inc.

"Houston, Texas, November 29, 1926. "Houston Steel & Foundry Corporation, 405 Binz Building, Houston, Texas. Attention Mr. Quick. Gentlemen: This will confirm our conversation with you today in which we agreed to rent the large building with approximately 48,000 sq. ft., and two smaller buildings adjacent, of the old Southern Motors plant, we to take possession of the large building and one small building on December 1, 1926, and the second small building to be turned over to us on March 20th, 1927.

"We are to pay you a total rental charge of $10,000.00 per year, to be paid monthly in advance. We are to have exclusive use of that portion of the tract which serves the 48,000 sq. foot building for the purpose of unloading and loading cotton. We are to furnish fire barrels and buckets and you are to allow us to use hydrants and furnish us with proper fire hose equipment. You are also to see that the water tank is always full of water and give us full water protection. We are to furnish our own day and night watchman. We will guarantee one year's rental of $10,000.00. It is understood that you are to begin immediately getting everything out of the warehouse that we are to use, and that everything will be cleaned out within one week. It is further understood that we will carry insurance on the cotton we store in these warehouses, but you are to carry insurance on the building. It is understood that you are to keep tracks and water equipment in good repair at all times.

"Yours very truly,

"Houston Compress Co.,

"By J. V. Scott, Vice-President."

At the time of the meeting in Freeman's office, on December 8, the track was blocked by a circus company's cars, so that the buildings north of the track could not be used by appellant on account of the occupancy thereof by the circus. There was but one contract, and it covered the entire property as soon as the circus moved off. If the circus moved off in three weeks, then the property north of the track had merged into the whole.

Here is where the controversy arose. There is no dispute as to part of the property being rented, but appellant contends that it did not lease all the property, because Scott, representing appellant, specifically stated that he refused to consider doing so until the circus moved off, and appellee's right to recover depended upon proving the agreement made by and between him and Quick.

This is peculiarly a fact case on the rental question. It was submitted to the jury by the court on two special issues, which, with the jury's answers thereto, are as follows:

"Special Issue No. One. Did J. V. Scott and Charles E. Quick, between November 29, 1926, and December 8, 1926, agree with each other, that if the plaintiff would get the circus off the property the defendant would take the whole property for a year at the price of $19,500.00?" The jury answered, "Yes."

"Special Issue No. Two. Do you find that the plaintiff exercised due diligence in an effort to secure other tenants for the property South of the railroad track?" The jury answered, "Yes."

These questions cover the only real issues in the case.

There is an abundant amount of evidence to support the jury's finding in answer to question No. 1. In fact there is no dispute as to the contract made for the rental of part of the property at $10,000 a year. The only dispute is as to the second part of the contract, which was verbal.

There were a number of witnesses who testified, and the testimony of some of them is challenged as being hearsay evidence. If the testimony of the witnesses were taken separately, there might be some merit in the exception, but, when considered all together and not apart, the objection loses its merit. The entire testimony gives a connected story.

There is no merit in appellant's first and second propositions. The court was warranted in submitting the case to the jury.

There is no merit in appellant's third and fourth propositions. There are only two real issues in the case, both of which were submitted by the court to the jury, so that any issues requested foreign to the issues submitted by the court or to any proper issue drawn by the pleadings and evidence in the case should be refused.

■ Plaintiff alleged and proved that the defendant agreed to lease the property south of the railroad track for an additional sum of $9,500, contingent upon the removal of the circus company, and that the circus was moved well within the time limit, and, there being no pleading or evidence of the withdrawal of said offer prior to the acceptance thereof, the court did not err in refusing to submit the issue as to the withdrawal of the offer requested by appellant. Appellant's fifth proposition is overruled.

■ It was not error for appellee's president to testify he had been advised by a representative of his corporation that appellant had agreed to contract with his corporation and what his understanding of the terms of the contract was, where it was shown that nego-

tiations were at that time pending between the parties for entering into said contract, and the testimony affords a connecting link in the transaction and forms a part of the negotiations that took place between them, particularly where the representative of plaintiff corporation himself testified to the same facts on the trial. Appellant's sixth, seventh, and ninth propositions are overruled.

■ It was not error for counsel to question a witness as to a certain party's presence at a meeting and to incorporate in the question such facts that would apprise the witness of the meeting referred to, when such facts were in the record as a part of the witness' own testimony; and the purpose of thus forming the question is to eliminate objections theretofore made that certain testimony was hearsay. The eighth proposition is overruled.

■ It was not error for the witness who was appellee's representative in the lease contract to state he had been told a certain party was interested in leasing the property, to show why defendant was approached by witness, the purpose of which was to show the incipiency of the transaction, and direct evidence of the making of the contract being introduced by plaintiff. Appellant's tenth proposition is overruled.

■ It was not error to permit the representative of appellee to testify that, except for his understanding that appellant had agreed to take the entire property, he would not have paid the sum of money to the circus company then occupying part of said property, to vacate the premises, when the lease contract provided that the circus company would have to move from the premises by a certain date, because it was not self-serving. The eleventh proposition is overruled.

■ There was no error in permitting an officer of appellee to testify to conversation appellee's agent had with appellant's agent over the telephone, for the witness testified only as to what was said in his presence. The twelfth proposition is overruled.

■ It was not error to exclude testimony of appellee's secretary, offered by appellant, as to whether or not said secretary offered to lease appellee's additional property long after, according to the contention of appellee, appellee was already bound in a contract to lease such property, as it was not shown that said secretary was clothed with authority to represent his corporation in such capacity, and such evidence was wholly irrelevant and immaterial to any issue in the case. The thirteenth proposition is overruled.

■ Where portion of a deposition taken by plaintiff is introduced in evidence and defendant thereafter introduces other portions of this deposition, and then defendant places this witness on the stand and by examination elicits new testimony not contained in the deposition of the witness, plaintiff is not bound to accept such testimony as correct, but is entitled to prove the truth of material facts and to contradict said witness' testimony by any other competent evidence, though the effect be to contradict his own witness. Appellant's fourteenth, fifteenth, and sixteenth propositions are overruled.

■ It was not error for the court to refuse to permit appellant to introduce evidence from the president of appellant corporation that within his knowledge the president of appellee, at the time of the negotiations for leasing of the property to appellant, was claiming one Cottrill had no authority to lease its property, as such testimony would have been in the nature of an ex parte hearsay statement, and it was irrelevant and immaterial. Appellant's seventeenth proposition is overruled.

■ Evidence of all negotiations and communications relating to the contract, and which formed a part of the transaction, and which tend to prove or negative the making of the contract as alleged, is admissible. Appellant's eighteenth proposition is overruled.

■ There is no merit in the nineteenth proposition of appellant in which it attacks the action of the court in holding an open communication with the jury. The facts were as follows:

"After the trial of this case was concluded, the jury retired for deliberation at approximately 5:15 p. m. o'clock. The jury deliberated until about 7 o'clock p. m., at which time they were taken by the officer in charge to get their meals, returning to the jury room at about 8:25 o'clock p. m. The foreman of the jury then made a written request to be submitted to the judge, which said request read as follows:

" 'What is the circumstance of the conversation between Mr. Scott and Mr. Quick in front of the building, dated December 8, 1926, as given by Mr. Quick in his deposition (this is referring to their conversation after the meeting in Mr. Freeman's office).

" 'J. L. Higbee.'

"The jury was brought into the courtroom by the officer in charge and after the entire jury was in the courtroom, the judge, in open court read to the jury the following reply, which he had reduced to writing:

" 'Gentlemen: I am not at liberty to tell you, but you can have the deposition read to you again tomorrow. It is in the hands of the stenographer and he is gone.

" 'Ewing Boyd.'

"Neither counsel for plaintiff nor counsel for defendant were present. Thereupon the jury returned to their room for further deliberations and continued to consider their verdict until around 10:30 o'clock p. m., on said same night, when they arrived at a verdict."

Appellant's nineteenth proposition is overruled.

Upon the facts of this case, it should have been submitted to a jury, and the motion

made by appellant for an instructed verdict was properly overruled.

We copy this statement from appellee's brief as it is a concise statement from the testimony and in good form:

"The negotiations were at first commenced by plaintiff's representative, Quick, with defendant regarding the leasing of the property north of the railroad track for an annual rental of $10,000.00. That thereafter defendant's vice-president and its representative in this transaction, J. V. Scott, stated that he was interested in also leasing the property south of the railroad track and that he had conversations with plaintiff's representative Quick to that effect. The testimony further shows that thereafter at a meeting in Mr. Freeman's office (Mr. Freeman was defendant's attorney) the leasing of the entire property, both north and south of the railroad track, was discussed and on that occasion it was finally agreed that the entire property would be leased to defendant for the period of one year at a rental of $19,500.00—$10,000.00 for the property north of the railroad track and $9,500.00 for the property south of the railroad track. That this was a definite rental agreement reached by plaintiff and defendant and that this agreement bore only one contingency, namely, that plaintiff was to remove the circus from that property within three weeks. It was also agreed that the rental agreement involving the property north of the railroad track be immediately reduced to writing but to meet Mr. Scott's fancy it was decided to await reducing to writing the rental agreement with reference to the property south of the railroad track until it was definitely ascertained that plaintiff could comply with the contingency of removing the circus within three weeks time."

There were but two issues in this case which the court very properly submitted, and it was not error for the court to refuse special issues requested by defendant, which were either incorporated in the main issues submitted to the jury, or which were foreign to any proper issue drawn by the pleadings and evidence in the case.

On the question of mitigating damages, there was but one issue drawn by the allegations of plaintiff and defendant, and that was as to whether such a rental agreement was entered into. There was but one controverted issue, and that was upon a general denial that defendant had not entered in the alleged rental contract for renting the property on the south side for $9,500.

In submitting cases upon special issues, the court should submit the ultimate and not issues evidentiary. Frigid Fluid Co. v. Sid Westheimer Co. (Tex. Civ. App.) 189 S. W. 334; Texas City Transp. Co. v. Winters (Tex. Civ. App.) 193 S. W. 366. Likewise was it held by the court in the case of North American Accident Insurance Co. v. Miller (Tex. Civ. App.) 193 S. W. 750, that special issues, which defendant requested to have submitted to the jury, were properly refused, where they sought to establish special facts included in the ultimate fact to be found.

The court, in Dendinger v. Martin (Tex. Civ. App.) 221 S. W. 1095, expressly held that no complaint can be made of the refusal of the court to submit certain special issues, where it submitted the ultimate controlling issues and the answers necessarily answered the main detailing subordinate issues requested.

It is to be noted that all the propositions and arguments of appellant center around the single proposition of contract or no contract, and are cumulative.

A careful and laborious examination of this record satisfies us that the case has been carefully and well tried, and is free from any substantial or material error that should cause its reversal.

It is therefore ordered that all assignments and claimed errors be, and they are, severally overruled, and the judgment of the trial court is affirmed.