## T. E. ALLEN v. THE STATE.

No. 1109.   Decided April 26, 1911.

Rehearing Denied May 31, 1911.

**1.—Arson—Circumstantial Evidence—Sufficiency of the Evidence.**

Where, upon trial of arson, the evidence was purely circumstantial, but linked up with that certainty as to authorize a conviction, there was no error. See opinion for facts held sufficient to support a conviction on circumstantial evidence.

**2.—Same—Continuance—Immateriality of Testimony.**

Where the testimony of the absent witness, as to the time when defendant was seen on the night of the commission of the offense, was immaterial, there was no error in overruling same.

**3.—Same—Charge of Court—Definition of House.**

Where the court in his charge defined a house to be any building, edifice, or structure enclosed with walls and covered, whatever be the material used for the building, there was no error.

**4.—Same—Charge of Court—Ownership.**

Where, upon trial of arson, the court charged that if the defendant burned a certain house as charged in the indictment to find him guilty, and the indictment alleged the name of the owner of the house, there was no error in not setting forth the name of the owner in the charge of the court.

**5.—Same—Bills of Exception—Practice on Appeal.**

Where bills of exception are not embraced in the record they can not be considered on appeal.

**6.—Same—Evidence—Deed—Ownership.**

The allegation of ownership in a prosecution for arson is merely to describe and identify the subject of the crime, and the title is not in issue, and there was no error to admit oral testimony to show that the alleged owner bought the property from a third party some time before the offense was committed, without introducing the deed.

**7.—Same—Evidence—Identification.**

Where the defendant was positively identified, there was nothing in the bill of exceptions objecting to such identification.

**8.—Same—Evidence—Tracks.**

Where, upon trial for arson, the evidence was entirely circumstantial, there was no error in permitting a witness to testify that he pointed out to the sheriff the team driven by the defendant; and in permitting the sheriff to testify that he examined the tracks and the feet of these horses.

**9.—Same—Witnesses Under the Rule—Discretion of Court.**

Where, upon appeal, the bills of exception did not show that the court abused his discretion in permitting a witness to testify who was not placed under the rule, there was no error.

**10.—Same—Argument of Counsel.**

Where the bill of exceptions presented no error, and the defendant requested no instruction to withdraw State counsel's argument there was no error.

**11.—Same—Motion for New Trial—Bills of Exception.**

Where the objections set out in the motion for new trial were not embraced by bills of exception in the record, they could not be considered on appeal.

Appealed from the District Court of Somervell. Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of arson; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Levi Herring, W. L. Dean* and *Owsley & Sullivan,* for appellant.— On the question of ownership: Withers v. State, 21 Texas Crim. App., 210; Cronin v. State, 30 Texas Crim. App., 278; Zwicker v. State, 27 Texas Crim. App., 539; Coffelt v. State, 27 Texas Crim. App., 608; Kelley v. State, 44 Texas Crim. Rep., 188; State v. Young, 101 Am. St. Rep., 21.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—In this case appellant was charged with arson, and upon a trial he was convicted and sentenced to five years confinement in the penitentiary.

1. This is a case of purely circumstantial evidence, and defendant insists that the circumstances do not link up with that certainty as to authorize a conviction.

It appears from the record that defendant was in charge of the gin that was burned, and had been managing it. A few days before the gin was burned he had instructed W. L. Tidwell, who was working for him, to take some bagging out of the gin house, saying to the witness it might catch fire, and if it did do so he would save that much. Dr. W. H. Powell testified that during the day (the gin burning that night), "I met the defendant on the streets of Glen Rose, and he told me that some cotton seed which I had previously bought from him were at the gin, and that I could get them, and I told him I would send down and get them that evening, and did do so." The gin was located between four and five miles from Glen Rose. J. E. Shipley testified that he was at the gin in the morning and the evening of the day (the night) it was burned, and the gin was not in operation; that there was no fire in the furnace and no steam in the boiler. Defendant is shown to have been in Glen Rose at 3:30 o'clock. John J. Hiner testified that defendant requested to be permitted to go with him in his auto to Granbury, and that he did so, arriving at Granbury at 5:15, it being the 19th day of September. Miss Ethel Gresham testified that defendant came to the Commercial hotel and registered, and was assigned to room No. 8, and was shown to his room. Mr. Fritz testified that he was cashier of the bank at Glen Rose, and was familiar with the handwriting and signature of defendant, and that the defendant's name on the hotel register was in the handwriting of defendant. Mr. Jones testified, and identifies defendant as the man who came to his stable in Granbury and got a team, saying he was going to Glen Rose. He describes the team secured by defendant,

"both horses are same color, both being sorrels, one of them being slightly sprinkled with gray, giving it a little lighter color than the other. The darker colored one is a horse, having one ear cropped off; the other is a mare, slightly smaller and lighter in color, and has a white face, or what is sometimes called a 'bald face.' There is a peculiarity about the feet of both of these horses. The horse had one front foot considerably larger than the other front foot—both larger and bigger hoof. Both front feet of the mare had a built-over frog, or a strip of iron extending from one point to the other point of the shoe, welded to the iron of the shoe. Defendant left the stable about seven o'clock of the evening of the 19th of September with this team, and told me he was going to Glen Rose. This team has often been driven to Glen Rose. A man named Milam has driven this team to Glen Rose frequently. This team at ordinary travel would make six or seven miles an hour, and if pushed a little would make ten miles an hour. The team was back in the stable next morning when I got there about seven o'clock." Jim Hiner testified he worked at Jones' livery stable. That a man got a team on the evening of the 19th of September, saying he was going to Glen Rose. The team was a sorrel horse and a sorrel mare; the horse had one cropped ear and one front foot larger than the other. The team was brought back somewhere between two and three o'clock that night, the same night the Rock Creek gin burned." He did not recognize defendant as the man, but said the man who brought the team back told him to get him at the Commercial hotel for the eastbound train, and said he would be in room No. 8, and witness says he afterwards woke him up for the train —that he was in room No. 8.

Mr. W. W. Lewis testified: "I was at Granbury, Texas, on Monday, and while there saw the defendant drive across the courthouse square in a buggy and double team, going in the direction that would have carried him to Glen Rose. It was about 7 p. m. The next morning I heard of the burning of the Rock Creek gin."

Mr. Isenby testified: "On the night of September 19th I saw one of Jones' teams come into Glen Rose. I took it to be one of his teams. One was a sorrel horse and the other a sorrel mare. I heard of the circumstance of the burning of the Rock Creek gin, and saw this team the same night. I was living on the Granbury-Glen Rose road. The team was going in the direction of Glen Rose and was near Glen Rose. I had seen this sorrel team frequently."

Grover Gibbs testified: "On the night the gin was burned I saw a team in Glen Rose going in the direction of the gin about 9 or 9:30 o'clock; it was a sorrel team and one of the horses had a bald face."

Leon Gresham testified he saw the team in Glen Rose the night the gin was burned, about ten o'clock; recognized it as a Granbury team, and the team Mr. Milam had driven in and out of Glen Rose a number of times. It was a sorrel team, one horse having an ear cropped.

S. A. Baker, nightwatchman at Glen Rose, testified: "On the night

the gin burned I saw the sorrel team, and it was going in the direction of the gin. One of the horses had a white face. I had seen this team driven frequently by Mr. Milam, and had seen Jones, the liveryman at Granbury, driving the team. Later, about eleven o'clock, I saw the team returning and going in the direction of the Granbury road. I recognized the team, as the moon was shining."

Wm. Forsyth testified: "On the night the gin was burned I had been at the home of Mr. Tarver, and was going home. About one mile from the gin I saw a double team in the lane coming from the gin or by the gin. It was about eleven o'clock. The team looked to be a sorrel team; one of them had a bald face. The team went in the direction of Glen Rose. The buggy was not far down the road when I saw the light of the fire.

Joe Woods testified he lived near the gin; that it burned about 10:30 at night. That he went there the next morning and saw the sheriff measuring tracks. The tracks were about fifteen or twenty feet from the gin. The horse and buggy tracks left, going in the direction of Glen Rose.

Sheriff Walsh went to the scene of the fire next morning and saw where a buggy and team had been driven up to the gate of gin yard. He followed these tracks for about half a mile, where they went into the Glen Rose road. He measured track of horses; one track was rounder than other, one having a larger hoof. The other horse made a track as though it had large frog in both feet. "I went on to Glen Rose and then to Granbury. At Mr. Jones' stable in Granbury I examined the sorrel team shown me by Mr. Jones. One of the team was a mare with a white face and the other had an ear cropped off. This horse had one foot longer than the other in front, and as I thought fitted the tracks I had seen and examined near the gin. The foot looked like it would make the kind of track."

This is a brief synopsis of the testimony. The court gave a full and complete charge on circumstantial evidence, and there was no error in refusing to give the special charge requested on this phase of the case. Neither was there any error in refusing to give the peremptory instructions requested in special charges Nos. 1 and 2, while special charge No. 4 was given in all essential particulars in the main charge.

2. In bill of exceptions No. 1 defendant complains of the action of the court in overruling his motion for a continuance. The court in his qualification shows that all the witnesses were present that defendant desired, and moved to continue on account of their absence, except one, and this one defendant stated he expected to prove by him that he, the witness, had talked with the witness at about eight o'clock on the night the gin was burned, in Granbury. This might be true, but under all the evidence it would not be material, as it would not render all the other testimony untrue. It is not questioned, but affirmatively shown by all the testimony, that defendant was in Granbury

on the evening in question, and the testimony of the absent witness that he saw him there "about eight o'clock" would not add to nor detract from the other testimony, and it is not material whether it was "about seven o'clock" or "about eight o'clock." Either one would have given him time to have driven to Glen Rose about ten o'clock, the hour the witnesses say they saw the team in Glen Rose.

3. In his charge the court defined a house to be "any building, edifice or structure enclosed with walls and covered, whatever be the material used for the building." Defendant in his second bill says this is insufficient. There is no question that the house which burned was a gin house, and this definition could not be misleading; besides, this definition is in exact accord with article 757 of the Penal Code.

4. The complaint that the charge instructed the jury "that on or about the 19th day of September, 1910, defendant did then and there wilfully set fire to and burn a certain house, as charged in the indictment," and did not charge that he "burned a house, the property of D. S. Arnold," is likewise without merit. The property burned is shown to be the property of D. S. Arnold, and was so charged in the indictment, and there is no question in the record of his ownership, and the charge is sufficient in that it says as charged in the indictment.

5. Bills of exception Nos. 3, 4, 5 and 6 are not in the record, therefore we can not consider anything based thereon.

6. In the trial of the case John Keeton was permitted to testify: "In September, 1910, I resided in Somervell County, Texas, and during the month and theretofore I was the owner of the gin outfit and building. I sold this building and gin property to one D. S. Arnold sometime during the month of September, 1910, and executed to him a deed of conveyance for it. Some two or three weeks after I sold the gin property to Arnold the house was destroyed by fire in the night. I do not remember the date of the fire, and did not see the fire, but was at the premises after the fire had occurred, and on the morning after it burned. The gin building was of the ordinary kind, built of lumber, with cedar posts, foundation and uprights, with walls of lumber and roof of iron. The main building consisted of one room with a seed room attached, all of which was totally burned. This burning occurred in Somervell County, Texas."

In bill of exceptions No. 7 defendant saved an exception to this testimony, on the ground that the deed was the best evidence, and oral testimony was inadmissible to show that Arnold was the owner of the property, and we are cited to the case of Goldsmith v. State, 46 Texas Crim. Rep., 559, wherein it is said: "We are of the opinion, under the peculiar facts of this case, the property being private property and unoccupied, that the deed should have been introduced. So upon another trial, if this question should arise, the introduction of the deed will avoid any complications." The indictment in this case alleged that defendant "did unlawfully, wilfully and maliciously set fire to

and burn a certain house of one D. S. Arnold." The case cited does not hold, and we do not think that in a case of arson it is essential that the deed be introduced. As stated in that case, it might be better practice, yet in passing on cases of arson it has frequently been held, and the rule seems to be that, while parol evidence is not admissible to prove the title to real estate, and evidence by deed has been required where the crime is against the property right of the fee owner, generally it is sufficient to prove possession of the property by parol testimony, since the offense is directed against the possession and occupancy, rather than against the absolute ownership, and the allegation of ownership is merely to describe and identify the subject of the crime, and the title is not in issue. This has been the holding of this court, so far as we can ascertain by reading the cases, and such is the doctrine announced in State v. Burrows, Hunt Ann. Case (Del.), 74; State v. Meyers, 36 Pacific, 1051, Knights v. State, 76 Am. State Rep., 78; State v. Elder, 21 La. Ann., 157; State v. Jaynes, 78 N. C., 508; State v. Daniel, 28 S. E., 255, and authorities cited by these cases.

7. As qualified by the court bill of exceptions No. 8 presents no error. Defendant was positively identified by M. F. Jones as the person who secured a buggy from him to go from Granbury to Glen Rose.

8. Neither was there any error in permitting Jones to testify that he pointed out to the sheriff the team driven by defendant to Glen Rose, nor was there error in permitting the sheriff to testify that he examined the feet of these horses.

9. Whether or not witnesses, who are not placed under the rule, will be permitted to testify, is a matter left to the discretion of the trial court, and this court does not feel called upon to rule upon the matter unless an abuse of this discretion is shown by the bill of exceptions. The bills in this case do not show that the court did more than exercise his discretion in permitting the witnesses Tidwell and Baker to testify, and show no error.

10. The only other bill complains of the remarks of the district attorney. As qualified by the court, this bill presents no error, especially as the defendant requested no instruction in regard to the matter.

11. Bills of exception Nos. 9, 12, 13, 14, 15, 16, 17 and 19 are not in the record, therefore we can not consider the grounds in the motion based on these alleged exceptions.

Finding no error in the record the judgment is affirmed.

*Affirmed.*

[Rehearing denied May 31, 1911.—Reporter.]