J. B. WILKERSON v. THE STATE.

No. 14113. Delivered October 21, 1931.
Rehearing Denied January 13, 1932.

6

The opinion states the case.

*Gentry & Gray,* of Tyler, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for the offense of arson, punishment being assessed at two years' confinement in the penitentiary.

It is not necessary to set out the facts further than as they may be called for in the discussion of some of the bills of exception. It is sufficient to say that the testimony of the accomplice witness was amply corroborated and all of the evidence together appears to leave no doubt of appellant's guilt.

The indictment contained two counts; one alleging that appellant was the owner of a house situated in the town of Lindale in Smith county, Texas, and which appellant is alleged to have wilfully burned; the second count avers that appellant was the owner of a house which he burned, there being apparent danger that the safety of a house belonging to a person other than appellant would be endangered.

Bill of exception number one recites that while the witness Burns was testifying the state was undertaking to prove by him that the building which was burned was covered by a policy of insurance. The court sustained objection that the insurance policy was the best evidence, whereupon the district attorney said, "We will at this time ask that the defendant produce the original policy. If he doesn't we are entitled to make our secondary proof." Whereupon the court stated that if the predicate was laid of course the testimony would be admissible, but sustained the objection at that time. The district attorney further said in the presence of the court and jury, "We have no way of making the defendant testify, or his wife, under the laws of this state, but we now request him to produce the policy and if he does not produce it, certainly it is the greatest motive that he could have would be to collect that insurance policy." The statements of the district attorney were objected to upon two grounds: first, that there was no allegation in the indictment that the house was burned in order to collect the insurance upon it, and, second;

that the remarks of the district attorney were a direct reference to the failure of the defendant to testify, and also a challenge to the defendant to take the witness stand or suffer the consequences. That no allegation appears in the indictment charging that the house alleged· to have been burned was insured appears to be immaterial. Whether the state was proceeding upon that phase of the statute or not, evidence that the house was insured would be material upon the question of motive. In regard to the second objection it appears that the incident occurred during the development of the case and at a time when it was impossible to know whether or not the defendant would take the stand as a witness in his own behalf. We can not regard the statement of the district attorney as a reference to the failure of the defendant to testify under these circumstances. This conclusion is supported by the following authorities. Bosley v. State, 69 Texas Crim. Rep., 100, 153 S. W., 878; Gatlin v. State, 72 Texas Crim. Rep., 516, 163 S. W., 428; Deal v. State, 99 Texas Crim. Rep., 385, 268 S. W., 746; Wimberly v. State, 109 Texas Crim. Rep., 581, 6 S. W. (2d) 120.

Bill of exception No. 6 relates to a similar incident with reference to a deed claimed to have been executed by the witness Kimble to appellant or his wife. What has been said regarding bill of exception No. 1 and the authorities cited in support of our conclusion relative thereto is applicable to bill of exception No. 6 and it will not be further discussed.

It was alleged in the indictment that appellant was the owner of the building which was burned. Bearing upon the ownership or control of the building the state introduced two letters written from Fort Worth, Texas, one addressed to G. G. Marchman at Lindale, dated February 15, 1929, the other addressed to T. G. Morris at Lindale, dated February 21, 1929. These letters were signed by Bert Wilkerson. The letters were unquestionably material touching the ownership and control of the property in question. As a predicate for the introduction of the letters the state proved that appellant lived in Fort Worth and there went by the name of Bert Wilkerson. A deputy sheriff for Smith county was introduced as a witness and the appearance bond of appellant in the present case was shown him and the deputy sheriff testified that appellant and Mr. Gentry, his attorney, came in the office together and that either appellant or Mr. Gentry in appellant's presence, delivered the bond to the witness. This appearance bond was introduced for the purpose of using appellant's signature thereto as a standard of comparison to prove the execution of the letters heretofore referred to. No objection whatever was interposed to the introduction of the appearance bond and no evidence was offered by appellant to the effect that he did not sign it in person. The state then offered two expert witnesses who testified in substance that in their opinions the signatures in the appearance bond and on the two letters were written by the same person, giving the reasons upon

which they based their opinions. Objection was interposed when the letters were offered in evidence, upon the ground that it had not been sufficiently shown that appellant in person signed the appearance bond. The rule in this state seems to be well settled that the standard of comparison must be established either by the production of a writing or signature admitted to be genuine or by establishing its genuineness by clear and undoubted testimony. See Heard v. State, 9 Texas App., 1. Other authorities to the same effect are collated under section 1411, Branch's Ann. Tex. P. C. We do not understand the rule to mean that the standard of comparison would be rejected because an issue might be made with reference to its genuineness. However, in this case, no evidence was introduced by appellant raising such an issue. The rule regarding the principle under discussion appears to be clearly stated in Ruling Case Law, vol. 10, Evidence, sec. 183, as follows: "When a writing is offered in proof as a standard, the court should first find as a fact that it is genuine, and the decision of the court as to the credibility of this preliminary evidence is conclusive, unless upon a report of all the evidence it is shown to be without foundation, or based upon some erroneous application of legal principles. And it seems that the handwriting used as a standard of comparison should be first established by direct proof of the signature, or other equivalent evidence, in order to avoid collateral issues tending to distract the minds of the jurors from the precise question before them. Purely circumstantial proof of the genuineness of a specimen writing must generally be strong, in order to make it competent to be used as a test paper."

The circumstances under which the appearance bond in question was delivered to the deputy sheriff appears to establish circumstantially at least the signature upon the appearance bond was executed by appellant in person, and the court under the rule just stated, was authorized in admitting it as a standard of comparison. Furthermore, the court properly admitted it under the provisions of our statute regarding bail bonds and the construction thereof by this court. Article 269, C. C. P., reads:

"A 'bail bond' is an undertaking entered into by the defendant and his sureties, for the appearance of the principal therein before some court or magistrate to answer a criminal accusation; it is written out and signed by the defendant and his sureties."

Subdivision 4, article 273, C. C. P., is as follows: "That the bond be signed by name or mark by the principal and sureties."

In construing the foregoing statutes this court in Walker et al. v. State, 109 Texas Crim. Rep., 618, 6 S. W. (2d) 356, concluded that it was the intent of the Legislature that the "principal's signature or mark be made in person."

The opinion on this subject in Horn v. State, 68 Texas Crim. Rep., 89, 150 S. W., 948, upon a casual examination appears to support appel-

lant's objection. However, a careful examination of that case fails to disclose under what circumstances the bail bond, the signature upon which was there used as a standard of comparison, came into the hands of the officers. It does appear that it was admitted over objection. The case of Phillips v. State, 6 Texas App., 364, cited as supporting the opinion in Horn's case, is not thought to be in point. In the Phillips case a letter was admitted in evidence as a standard of comparison but later upon objection of appellant it was withdrawn from the consideration of the jury; yet, notwithstanding this, the court permitted the expert witnesses to use the signature on that letter which had been withdrawn as a standard of comparison in their testimony, which, of course, was an erroneous proceeding. In the present case, as heretofore stated, no objection was interposed to the receipt in evidence of the appearance bond and signature threto as a standard of comparison, and no request was ever made of the court to withdraw it from the jury. We therefore conclude that the objection to the testimony of the expert witnesses upon the ground first stated presents no error.

If the Horn case (supra) may be construed as in conflict with the conclusions here expressed it is overruled upon that point.

We find no merit in the further objection that no sufficient predicate had been laid to authorize the expert witnesses to give their opinions respecting the signatures, nor the further objection that the letters in question were dated in February, and the house was not alleged to have been burned until August of the same year.

An examination of the court's charge in the light of the objections thereto does not lead us to the conclusion that any error appears in the charge.

The witness Marvin Pruitt used by the state owned a house situated on the same lot as the one burned. He testified that he first met appellant seven or eight days before the fire; that appellant opened up a business in the building that was subsequently burned; that in the building were some second-hand automobile tires, a bedstead and a tube patching machine and a couple of cans of gasoline. The witness testified that appellant and another man were standing inside the building and that witness introduced himself to them and among other things said, "You have this junk in here and cans of gasoline and I live right there and we have got no insurance and I don't like it, it don't appeal to me, and looks suspicious;" that the man who was with appellant said he was going to stay down there and would guarantee there would be no fire while he was there, and that witness told him to be sure there was not because everything he had was right in the yard there and that the building in question could not burn and witness' house escape burning. During this conversation appellant made no statement whatever. This witness further testified that on the day before the fire occurred he saw appellant

and a negro in the building and watched them and saw appellant pour gasoline out of a barrel and scatter it about over the building. There was some sawdust in the building; that appellant raked it up in a pile in the back end of the building and saturated it with gasoline until it ran on the floor like water; and that he reported the matter to other parties. Objection was interposed to that part of the testimony of the witness Pruitt as to his opinion that the situation in the building looked suspicious to him. Perhaps this part of the testimony should not have been received, yet, in view of the entire testimony of the witness in question, and the whole record in the case, we are not led to believe that a reversal should be ordered. The statement of the witness was not an expression of an opinion to third parties, but was in a direct conversation with appellant himself, to which no reply was made by appellant.

The judgment is affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

LATTIMORE, Judge.—Appellant advances several propositions. In the able argument in support of his motion, it is contended that the evidence does not support the allegation of ownership of the burned property, in appellant. The proof sufficiently showed appellant to be the occupant of said house, in actual care, control and management of same at the time. There is some suggestion in the testimony that the loss claim was made in the name of appellant's wife. In either event the allegation of ownership in appellant was proper, and met by the proof. In Pinckard v. State, 62 Texas Crim. Rep., 602, we held ownership properly alleged in the husband when the title was in his wife, in an arson case. In Morgan v. State, 114 Texas Crim. Rep., 478, 22 S. W. (2d) 461; Wyley v. State, 34 Texas Crim. Rep., 515, 31 S. W., 393, and Allen v. State, 62 Texas Crim. Rep., 506, 137 S. W., 1133, we held the allegation of ownership properly supported by proof of the actual care, control and management of the property in question by the person named in the indictment as owner.

Appellant argues that the conclusion upheld by this court in this case and some others, to the effect that an allusion to the fact that the defendant has not yet testified, even though made before the state has rested the case in chief, and before it can be determined whether the accused is going to take the stand as witness, could be made the means of inflicting great harm and injury to the accused, and that our holding is incorrect. In Wimberly v. State, 109 Texas Crim. Rep., 581, 6 S. W. (2d) 120, 121, we said: "Unless something should appear in the statement made from which this court might conclude that the language used was such as to induce the jury to consider against the accused the fact that he did not testify, we would not be inclined to hold such action reversible error. The statement made by the district attorney in this instance was in almost

the exact language used by the court in the charge, and it does not appear to have been made with any sort of purpose of calling the jury's attention to the fact, or in anywise using it against the accused."

We might here further say that if the language used by the attorneys in this case should be made to appear to have been made having in mind the calling of the jury's attention to the right of the accused to testify, and in some way to suggest or intimate that if he did not do so it should be taken as a fact against him,—or if by a fair interpretation of what is said, such inference should appear, a different question would be before us. This court has no inclination to give to either side in a criminal case more latitude than the law allows, or more than fairness and justice to all parties would permit. We find nothing in the language used in this case which, in our opinion, conveys any inference that it was the purpose of the state's attorney in what he said while the state was introducing its evidence in chief, to call the jury's attention in any way to the failure of the defendant to take the stand and testify.

Appellant devotes most of his motion to a complaint of our holding that no error appeared in allowing expert witnesses to make comparison between the handwriting of the signature of appellant's appearance bond herein and certain letters purporting to have been written at Fort Worth and signed by Bert Wilkerson, statements in which were material as showing the interest and motive of this appellant,—if said letters be attributed to him,—in the burning of the property in question. The record shows that during the trial the state offered in evidence "the appearance bond of the defendant J. B. Wilkerson in this case." The document was admitted without any objection whatever. It thus became part of the evidence in the case. In the usual form same recited that "We, J. B. Wilkerson, as principal, * * * Signed by us, sealed with our seals, * * * (Signed) J. B. Wilkerson, Principal." The name of appellant was not signed to said bond by any one as agent, nor was it signed by the making of his mark. The bond was offered as appellant's act, and purported to be such, and was admitted in evidence before the jury as the act of appellant for any legitimate purpose. In Kennedy v. Cox et al., 64 Texas, 411, our Supreme Court, speaking through Judge Stayton, said:

"It is urged that the court erred in permitting a number of witnesses, who qualified as experts, upon the examination of papers which were properly in evidence in the case, and of papers which the appellant had introduced as bearing the genuine signature of the testator, without objection, and of a paper which on a former trial the appellant had introduced and declared to bear the genuine signature of the testator, made at the same time as the codicil, to give their opinions as to the genuineness of the signature of the testator to the codicil.

"We are of the opinion that there was no error in this ruling.

"This evidence falls within the rule which permits the opinions of

experts to be given, and permits the jury to determine for themselves, from an examination of the papers before them, whether the writing in controversy is genuine. The papers examined were already in the case and admitted to be genuine, or were such as the appellant was estopped to deny the genuineness of. 1 Greenleaf, 578, 581; 1 Wharton's Law of Evidence, 713; Abbott's Trial Evidence, 396; Best on Evidence, 239."

This is approved in Smyth v. Caswell, 67 Texas, 573, 4 S. W., 848. In Wagoner v. Ruply, 69 Texas, 704, 7 S. W., 80, 81, it was said: "The papers having been admitted without objection, and admitted or treated by both parties as genuine, and sent up for inspection by the Supreme Court, and the object of their admission being certainly to allow the court to make the comparison, it would seem that the opinion of an expert could be taken as to the handwriting and signature of the notes by comparison with the papers."

The Kennedy v. Cox case, supra, was approved by this court in Mahon v. State, 46 Texas Crim. Rep., 234, 79 S. W., 28. The record shows that appellant was with his attorney when said appearance bond was tendered and accepted by the officers of the court, as appellant's bond. He was present when same was offered in this case as his act. If, in some events, he might be heard to deny that he personally signed said bond, it is beyond dispute that he did not do so in this case. We still think our disposition of this point in our original opinion was sound.

Appellant renews his objection to certain matters contained in his bill of exception No. 4. In said bill it appears that certain testimony which is set out was objected to, and the bill states that special objection was made to a certain part of said testimony, and that "Defendant especially objected to said testimony for the reason that it clearly showed that the defendant made no reply," etc. It is difficult for us to differentiate as between the testimony generally objected to and that specially objected to when all of it is contained in the same bill, and we can not tell whether the trial court was controlled by the general objection or the special objection, part of the matters set out in said bill being plainly admissible.

The motion for rehearing will be overruled.

*Overruled.*